[No. S061699. Aug. 20, 1998.]

AYDIN CORPORATION, Plaintiff and Respondent, v.
FIRST STATE INSURANCE COMPANY, Defendant and Appellant.

1184

## COUNSEL

Crosby, Heafey, Roach & May, James C. Martin, Joseph P. Mascovich, Boyd C. Sleeth, Melito & Adolfsen, Siff Rosen and Louis G. Adolfsen for Defendant and Appellant.

Wiley, Rein & Fielding, Laura A. Foggan, Daniel E. Troy, Craig S. Lerner, Bien & Summers, Elliot L. Bien, Hancock, Rothert & Bunshoft and William J. Baron as Amici Curiae on behalf of Defendant and Appellant.

Brobeck, Phleger & Harrison, Donald W. Brown, David E. Weiss and Edith M. Hofmeister for Plaintiff and Respondent.

Troop, Meisinger, Steuber & Pasich, Martin D. Katz, Lauri S. Konishi, Latham & Watkins, David L. Mulliken, Dorn G. Bishop, Julia E. Parry, Heller, Ehrman, White & McAuliffe and David B. Goodwin as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BROWN, J.**—In this case, we must decide whether, in an action seeking indemnity under a standard commercial general liability insurance policy

(formerly called a comprehensive general liability insurance policy), the insured or the insurer bears the burden of proving that a claim comes within the "sudden and accidental" exception to the general pollution exclusion. The Court of Appeal concluded that once the insurer carries its burden of proving that the exclusion applies, the insured bears the burden of proving the exception. We agree with the Court of Appeal's conclusion and, therefore, affirm its judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Contamination and the Remedial Action Order*

The underlying facts are well summarized in the Court of Appeal's opinion. From 1969 until May 1984, plaintiff Aydin Corporation (Aydin) operated a research and manufacturing complex in Palo Alto at which it fabricated, assembled, and repaired electrical transformers. These operations required the use of a variety of noxious chemicals, oils, solvents, and waste materials. Some of these fluids were stored in metal tanks buried underground; other liquids were kept aboveground in 55-gallon metal drums. The drums and material pumped out of the tanks were turned over to a disposal company.

In 1980, Aydin discovered polychlorinated biphenyl (PCB) ground soil contamination and attempted to correct it. In July 1981, Aydin discovered the PCB contamination had recurred, and on a much larger scale. PCB contamination was found in the area of the underground tanks. There was also solvent contamination of the groundwater beneath the site. The tanks, removed in 1986, contained numerous holes. Aydin notified the California Department of Health Services, which promulgated a remedial action order requiring Aydin to undertake an extensive program of studies, monitoring, and cleanup efforts.

### B. *The Comprehensive General Liability Insurance Policies*

From the beginning of 1980 to the end of 1981 (i.e., during the period when the second PCB contamination was discovered), Aydin had $5 million of excess coverage issued by defendant First State Insurance Company (First State). In each of the two annual comprehensive general liability insurance policies at issue, First State agreed to indemnify Aydin for "all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of: [¶] A. PERSONAL INJURY as hereinafter defined; [¶] B. PROPERTY DAMAGE, as hereinafter

defined . . . [¶] to which this policy applies, caused by an OCCURRENCE, as hereinafter defined, happening anywhere in the world." The term "OCCURRENCE" is defined as "an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. . . ."

Under the heading "EXCLUSIONS," each policy stated that it "shall not apply . . . [¶] . . . [¶] . . . to any liability of any INSURED, arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water *unless such discharge, dispersal, release or escape is sudden and accidental.*" (Italics added.)

C. *The Declaratory Relief Action*

In 1986, Aydin commenced this action for declaratory relief, seeking a judgment as to the coverage provided by its primary and excess insurers. First State asserted there was no coverage under its policies because, among other things, "[t]he discharge, dispersal, release or escape of the contaminants was not 'sudden and accidental,' pursuant to the pollution exclusion." At trial, the trial court gave the advisory jury the following instruction regarding the burden of proof: "The policies issued by First State contain pollution exclusions. To establish its defense based on the pollution exclusions, First State has the burden of proving by a preponderance of the evidence (1) that Aydin Corporation's liability arises out of the 'discharge, dispersal, release or escape' of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; and (2) that the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants was not 'sudden and accidental.' "[1] First State objected to the second half of this instruction, contending that Aydin should bear the burden of proving the "sudden and accidental" exception.

At the conclusion of its deliberations, the jury answered "No" to the following two special interrogatories: (1) "Has First State met its burden of proving that Aydin Corporation's legal liability arises out of discharge(s),

---

[1]The trial court went on to define the term "sudden and accidental" for the jury. Since the parties have not challenged the trial court's definition in this court, we have no occasion to address the proper meaning of the term in this case.

dispersal(s), release(s) or escape(s) of contaminants, into or upon a water course or body of water, which were not 'sudden and accidental'?" (2) "Has First State met its burden of proving that Aydin Corporation's legal liability arises out of discharge(s), dispersal(s), release(s) or escape(s) of contaminants, into or upon land, which were not 'sudden and accidental'?" The trial court adopted these findings and, after resolving a number of other points not at issue here, entered a declaratory judgment in favor of Aydin.

On appeal, the Court of Appeal concluded that the trial court should have assigned Aydin the burden of proving that its claim came within the "sudden and accidental" exception to the general pollution exclusion. The Court of Appeal accepted Aydin's concession that any error in this regard was prejudicial and, accordingly, reversed the judgment. We granted Aydin's petition for review.

## II. DISCUSSION

██ The general principles governing our review of this matter are well established. The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage. (*Weil* v. *Federal Kemper Life Assurance Co.* (1994) 7 Cal.4th 125, 148 [27 Cal.Rptr.2d 316, 866 P.2d 774, 32 A.L.R.5th 789]; *Searle* v. *Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 437-438 [212 Cal.Rptr. 466, 696 P.2d 1308].) And, once an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded. (*Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704]; *Searle* v. *Allstate Life Ins. Co.*, *supra*, 38 Cal.3d at pp. 437-438; *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098].)

██ Although the parties agree on these general principles, they disagree as to whether the "sudden and accidental" exception should be construed as a coverage provision or an exclusionary provision when allocating the burden of proof. Aydin asserts First State should bear the burden of *negating* the exception because it "does not *grant* coverage; it serves only to establish the reach of the exclusion by describing what coverage already provided by the policy's broadly worded basic coverage provision *is not being taken away*." (Original italics.) First State, on the other hand, asserts Aydin should bear the burden of *establishing* the exception because "its effect is to reinstate coverage that the exclusionary language otherwise bars." For the reasons discussed below, we agree with First State.

At the outset, we note that neither *Bebbington* v. *Cal. Western etc. Ins. Co.* (1947) 30 Cal.2d 157 [180 P.2d 673, 1 A.L.R.2d 361] (hereafter *Bebbington*)

nor *Strubble* v. *United Services Auto. Assn.* (1973) 35 Cal.App.3d 498 [110 Cal.Rptr. 828] (hereafter *Strubble*), the two California cases on which Aydin places its primary reliance, is helpful in resolving the instant matter.

In *Bebbington*, this court addressed a life insurance policy with "a rider providing that in the event of the death of the insured as a result of airplane travel other than as a fare-paying passenger in licensed aircraft flying a regular scheduled passenger flight, the liability of [the insurer] should be limited to the reserve of the policy." (*Bebbington, supra*, 30 Cal.2d at p. 159.) After reviewing the evidence offered by the insurer, we concluded that it "simply failed to prove the essential fact which would make operative the exclusion clause of the rider." (*Id.* at p. 162.) We noted that while the insurer "was able to show that the deceased was killed in an airplane crash, [it] failed to show that he was not riding as a passenger in a licensed passenger aircraft at the time." (*Id.* at p. 159.)

*Bebbington* is not illuminating in the present context. First, there is no indication the proper allocation of the burden of proof was even a contested issue in that case. To the contrary, we devoted the bulk of our opinion to explaining why the specific evidence the insurer had offered was either inadmissible or insufficient. (*Bebbington, supra*, 30 Cal.2d at pp. 159-162.) Second, the specific policy language at issue in *Bebbington* was not set out in our opinion (see *id.* at p. 159), making it impossible to draw any meaningful comparison between the language at issue there and the language at issue here. Finally, our past decisions establish that, to the extent the burden of proof discussion in *Bebbington* has any continued vitality, it should be strictly limited to the factual setting of that case. (See *Zuckerman* v. *Underwriters at Lloyd's* (1954) 42 Cal.2d 460, 474 [267 P.2d 777] [declining to apply the rationale of *Bebbington* to an accident insurance policy]; see also *Heller* v. *Bankers Life & Cas. Co.* (1963) 220 Cal.App.2d 184, 187-188 [33 Cal.Rptr. 586] [same].) Indeed, according to the authoring justice of *Bebbington*, it has been overruled "so far as the burden of proof is concerned." (*Zuckerman* v. *Underwriters at Lloyd's, supra*, 42 Cal.2d at pp. 484-485 (dis. opn. of Carter, J.).)

In *Strubble*, the Court of Appeal addressed an "all-risks" insurance policy which, by virtue of a special endorsement, included the peril of an earthquake. (*Strubble, supra*, 35 Cal.App.3d at pp. 502, 504.) The policy also contained a specific exclusion for earth movement. (*Ibid.*) The court held that "defendant insurer, in order to establish its defense of noncoverage of its policy, had the burden of proving that plaintiffs' loss was proximately caused by the excluded peril of earth movement other than earthquake (an

included peril). To accomplish this defendant insurer had to prove that the included peril of earthquake did not proximately cause the loss that plaintiffs, the insured, suffered. In other words, it had to negative its exception (earthquake) to its exclusion (earth movement) since the burden of proof of its defense of noncoverage of the policy sued on rested on it. [Citation.]" (*Id.* at pp. 504-505, fn. omitted.)

Like *Bebbington, Strubble* is not instructive here. The *Strubble* court emphasized that its holding applied *only* to all-risks insurance policies, explaining that "in an action upon an all-risks policy such as the one before us (unlike a specific peril policy), the insured does not have to prove that the peril proximately causing his loss was covered by the policy. This is because the policy covers *all risks* save for those risks specifically excluded by the policy." (*Strubble, supra,* 35 Cal.App.3d at p. 504, original italics.) Under a comprehensive general liability insurance policy such as the one at issue here, by contrast, the insured clearly bears the burden of establishing coverage. (See, e.g., *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

In the absence of any California cases on point, we look to how other jurisdictions have dealt with the problem. Although there was relatively little authority on the issue at the time the trial court instructed the jury, the overwhelming weight of authority now places the burden of proving the "sudden and accidental" exception on the insured. According to our research, five state high courts have considered the issue, and all five, in unanimous opinions, have placed the burden on the insured. (See *E.I. du Pont de Nemours* v. *Allstate Ins.* (Del. 1997) 693 A.2d 1059, 1061; *Highlands Ins. Co.* v. *Aerovox Inc.* (1997) 424 Mass. 226 [676 N.E.2d 801, 804-805]; *SCSC Corp.* v. *Allied Mut. Ins. Co.* (Minn. 1995) 536 N.W.2d 305, 314; *Northville Industries* v. *Nat. Union Ins.* (1997) 89 N.Y.2d 621 [657 N.Y.S.2d 564, 679 N.E.2d 1044, 1048-1049]; *Sinclair Oil Corp.* v. *Republic Ins. Co.* (Wyo. 1996) 929 P.2d 535, 543.) The United States Court of Appeals for the Ninth Circuit, predicting how this court would rule on the issue, has also held that the insured bears the burden of proof. (*Aeroquip Corp.* v. *Aetna Cas. and Sur. Co., Inc.* (9th Cir. 1994) 26 F.3d 893, 894-895.) Likewise, all of the currently valid federal appellate decisions predicting how other state high courts would rule have placed the burden on the insured. (See *LaFarge Corp.* v. *Travelers Indem. Co.* (11th Cir. 1997) 118 F.3d 1511, 1516 [Florida law]; *Harrow Products, Inc.* v. *Liberty Mut. Ins. Co.* (6th Cir. 1995) 64 F.3d 1015, 1020 [Michigan law]; *St. Paul Fire and Marine Ins.* v. *Warwick Dyeing* (1st Cir. 1994) 26 F.3d 1195, 1199-1200 [Rhode Island law]; *Northern Ins. Co.* v. *Aardvark Associates* (3d Cir. 1991) 942 F.2d 189, 194-195 [Pennsylvania law]; *A. Johnson & Co., Inc.* v. *Aetna Cas. and Sur. Co.* (1st Cir. 1991)

933 F.2d 66, 75-76, fn. 14 [Maine law]; but see *State of N.Y.* v. *Blank* (2d Cir. 1994) 27 F.3d 783, 788-789 [wrongly predicting how New York high court would rule]; *New Castle County* v. *Hartford Acc. and Indem. Co.* (3d Cir. 1991) 933 F.2d 1162, 1181-1182 [wrongly predicting how Delaware high court would rule].)[2]

We find the reasoning reflected in this extensive body of case law persuasive. Specifically, we agree that the "sudden and accidental" exception is properly construed as a coverage provision when allocating the burden of proof. ▮ In making this determination, we are guided by the familiar principle that the provisions of an insurance policy, like the provisions of any other contract, must be construed in the context of the policy as a whole. (*Buss* v. *Superior Court* (1997) 16 Cal.4th 35, 45 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Waller* v. *Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 18; *Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) ▮ As Aydin forthrightly acknowledged at oral argument, it is the function served by policy language, not the location of language in an insurance policy, that is determinative. While Aydin is certainly correct in describing the basic coverage provision as "broadly worded," the general pollution exclusion is equally broad, stating that the policy "shall not apply . . . [¶] . . . [¶] . . . to any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water . . . ." As the Court of Appeal explained in construing a virtually identical exclusion, "[t]his language create[s] a broad exclusion from coverage for any liability resulting from pollution." (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 753 [15 Cal.Rptr.2d 815].)

---

[2]In its opening brief, Aydin cites a leading insurance treatise for the proposition that "[w]hen an insurer uses a narrowing exception to construct an exclusion, the insurer 'does not sustain its burden of proof unless it negatives the exception in the [exclusion]. [Fn. omitted.]' " (Quoting 19 Couch on Insurance (2d ed. 1983) § 79:385, p. 338.) In reality, the treatise merely notes a split in authority on the burden of proof issue. Thus, the *very next sentence* of the treatise continues, "There is, however, authority that when a policy contains an exception within an exception, the insurer need not negative the internal exception; rather, the plaintiff must show that the exception from the exemption from liability applies." (*Ibid.*, fn. omitted.) In fact, the supplement to the treatise cites some of the very cases we rely on here. (See *id.* (1998 pocket supp.) pp. 27-28, citing *LaFarge Corp.* v. *Travelers Indem. Co.*, *supra*, 118 F.3d 1511; *St. Paul Fire and Marine Ins.* v. *Warwick Dyeing*, *supra*, 26 F.3d 1195; *SCSC Corp.* v. *Allied Mut. Ins. Co.*, *supra*, 536 N.W.2d 305.)

Read in the context of this broad exclusionary language, the "sudden and accidental" exception serves to "reinstate coverage" where it would otherwise not exist.[3] (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at p. 753, italics omitted; see also *SCSC Corp.* v. *Allied Mut. Ins. Co., supra,* 536 N.W.2d at p. 314 ["the exception to the exclusion 'restores' coverage"].) ■ "Once the insurer has established that the pollution exclusion applies, coverage depends on the applicability of the exception. Because the *insured* bears the burden of establishing coverage under an insurance policy, it makes sense that the insured must also prove that the exception affords coverage after an exclusion is triggered. [Citations.]" (*St. Paul Fire and Marine Ins.* v. *Warwick Dyeing, supra,* 26 F.3d at p. 1200, original italics; see also *Highlands Ins. Co.* v. *Aerovox Inc., supra,* 676 N.E.2d at p. 805; *SCSC Corp.* v. *Allied Mut. Ins. Co., supra,* 536 N.W.2d at p. 314; *Northville Industries* v. *Nat. Union Ins., supra,* 679 N.E.2d at pp. 1048-1049; *Aeroquip Corp.* v. *Aetna Cas. and Sur. Co., Inc., supra,* 26 F.3d at p. 895.) As a coverage provision, the exception will be construed broadly in favor of the insured. (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 667 [42 Cal.Rptr.2d 324, 913 P.2d 878]; *National Union Fire Ins. Co.* v. *Lynette C.* (1991) 228 Cal.App.3d 1073, 1082 [279 Cal.Rptr. 394].) This broad construction will aid the insured in meeting its burden of proof, thereby ensuring that the end result (coverage or noncoverage) conforms to the insured's objectively reasonable expectations. (See *Montrose Chemical Corp.* v. *Admiral Ins. Co., supra,* 10 Cal.4th at p. 667.)

■ Throughout their briefing, Aydin and the amici curiae who have filed briefs on its behalf argue that construing the "sudden and accidental" exception as a coverage provision will "invite the insurance industry to manipulate the allocation of the burden of proof by . . . simple linguistic adjustments" since "[a]lmost any straightforward exclusion can be reframed as a broader exclusion subject to a narrowing exception." One group of amici curiae, for example, complains that an insurer would bear the burden of proving a "qualified pollution exclusion that bars coverage for nonsudden or nonaccidental discharges of pollutants." This argument proves too much. The policies at issue here do not contain such an exclusion but rather, as noted above, "a broad exclusion from coverage for any liability resulting from pollution." (*Shell Oil Co.* v. *Winterthur Swiss Ins. Co., supra,* 12 Cal.App.4th at p. 753.) The fact that different policy language might result in a different allocation of the burden of proof should hardly come as a shock.

---

[3]*Hurley Construction Co.* v. *State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533 [12 Cal.Rptr.2d 629], cited by Aydin, is not to the contrary. In that case, the Court of Appeal made the unremarkable observation that "[o]rdinarily, an exception to a policy exclusion does not create coverage not otherwise available under the coverage clause. [Citation.]" (*Id.* at p. 540.) Unlike in *Hurley,* the coverage Aydin seeks by virtue of the "sudden and accidental" exception to the general pollution exclusion *is* available under the coverage clause.

Rather, it arises from the parties' general freedom to contract as they deem fit. Simply put, our obligation is to give effect to the language the parties chose, not the language they might have chosen.

Having concluded that the "sudden and accidental" exception should be construed as a coverage provision as to which the insured would ordinarily bear the burden of proof (Evid. Code, § 500),[4] we next consider whether there is any reason to alter the normal allocation of the burden of proof. ■ " '[T]he general rule allocating the burden of proof applies "except as otherwise provided by law." The exception is included in recognition of the fact that the burden of proof is sometimes allocated in a manner that is at variance with the general rule. In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact.' " (*Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 660-661 [25 Cal.Rptr.2d 109, 863 P.2d 179], quoting Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1966 ed.) § 500, p. 431.)

■ The Court of Appeal correctly concluded there is no compelling reason to alter the normal allocation of the burden of proof with respect to the "sudden and accidental" exception.[5] As the Court of Appeal noted, "[i]t is the strong public policy of this state to prevent, eliminate, and reduce pollution. (E.g., Pub. Resources Code, §§ 21000-21002.) That policy would be impaired if the insured has a positive disincentive to discover pollution. Shifting the burden of proof [to the insurer would] constitute[] such a disincentive because it would . . . reward ignorance by increasing the likelihood of insurance coverage. Rewarding an insured's 'see no evil' position would also undercut the insured's obligations to the insurer of notice, cooperation, and good faith." (See also *Highlands Ins. Co.* v. *Aerovox Inc.*, *supra*, 676 N.E.2d at p. 805; *Northville Industries* v. *Nat. Union Ins.*, *supra*, 679 N.E.2d at p. 1049; *Aeroquip Corp.* v. *Aetna Cas. and Sur. Co., Inc.*, *supra*, 26 F.3d at p. 895.)

Moreover, as the Court of Appeal explained, "[i]t is only common sense that the insured will have greater information and knowledge about the

---

[4]Evidence Code section 500 provides as follows: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."

[5]In its briefing, Aydin agrees there is no reason to alter the normal allocation of the burden of proof. Its argument, however, is backwards, based as it is on the mistaken assumption that the burden of proof in the first instance lies on First State.

insured's property and/or operations conducted by the insured which may result in damage or liability. The circumstances in this case furnish a perfect illustration. The Aydin site was in California; First State, by contrast, is a Massachusetts corporation, with its principal office in that state. It is impractical to require transcoastal monitoring by an excess insurer. The situation is best handled as it long has been, by the insured agreeing to contractual duties of: (1) reporting losses suffered or claims made, and (2) cooperating with the insurer's subsequent investigation. The insured's superior knowledge is the predicate for these duties." (See also *Highlands Ins. Co.* v. *Aerovox Inc.*, *supra*, 676 N.E.2d at p. 805; *SCSC Corp.* v. *Allied Mut. Ins. Co.*, *supra*, 536 N.W.2d at p. 314; *Northville Industries* v. *Nat. Union Ins.*, *supra*, 679 N.E.2d at p. 1049; *Harrow Products, Inc.* v. *Liberty Mut. Ins. Co.*, *supra*, 64 F.3d at p. 1020; *Aeroquip Corp.* v. *Aetna Cas. and Sur. Co., Inc.*, *supra*, 26 F.3d at p. 895.)

In short, placing the burden of proof on the insured "conforms with an insured's general duty to establish coverage where it would otherwise not exist, provides the insured with an incentive to strive for early detection that it is releasing pollutants into the environment and appropriately places the burden of proof on the party having the better and earlier access to the actual facts and circumstances surrounding the discharge [citations]." (*Northville Industries* v. *Nat. Union Ins.*, *supra*, 679 N.E.2d at p. 1049.) For these reasons, we conclude that in an action seeking indemnity under a standard commercial general liability insurance policy, once the insurer carries its burden of proving that the general pollution exclusion applies, the insured bears the burden of proving that a claim comes within the "sudden and accidental" exception.[6]

## III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., and Chin, J., concurred.

---

[6]We note that some Courts of Appeal have held that regardless of which party bears the burden of proof when indemnification is at issue, when the defense duty is implicated, the insurer is obligated to defend its insured in an underlying action if there is any *potential* that the release or escape of at least some of the pollutants was "sudden and accidental." (See, e.g., *Vann* v. *Travelers Companies* (1995) 39 Cal.App.4th 1610, 1616 [46 Cal.Rptr.2d 617], citing *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 304-305 [24 Cal.Rptr.2d 467, 861 P.2d 1153]; *Montrose Chemical Corp.* v. *Admiral Ins. Co.*, *supra*, 10 Cal.4th at pp. 661-662, fn. 10.) Since the duty to defend is not at issue in this case, we express no opinion as to which party should bear the burden of proof in that context.

**MOSK, J.**—I dissent.

The majority affirm the judgment of the Court of Appeal, which reversed the judgment of the superior court, because they agree with the former that the latter committed reversible error by allocating to First State Insurance Company and not Aydin Corporation the burden of proof as to whether a claim that Aydin presented to First State came within a certain exclusionary clause of each of two umbrella liability insurance policies.

I would reverse the Court of Appeal's judgment because I believe that the superior court did not commit any error whatsoever in the premises, reversible or otherwise.

Section 500 of the Evidence Code stands at the beginning of our analysis. And, as will appear, it will determine our result at the end.

Evidence Code section 500 expressly declares that, "[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." It impliedly declares that, except as otherwise provided by law, a party has the burden of proof as to his claim for relief or defense.[1]

At the threshold, I agree with the majority that it is the general rule of Evidence Code section 500 that is applicable and not any exception thereto.

I also agree that, under Evidence Code section 500, it is the insured that bears the burden of proving that a claim that it presents to the insurer comes within an insuring clause of a liability insurance policy, and hence it is the insured that bears the burden of proving that every fact essential thereto either exists or does not exist, as the case may be. (*Travelers Casualty & Surety Co.* v. *Superior Court* (1998) 63 Cal.App.4th 1440, 1453 [75 Cal.Rptr.2d 54], petition for review filed June 26, 1998 (S071423), review denied September 16, 1998; accord, e.g., *Executive Aviation, Inc.* v. *National Ins. Underwriters* (1971) 16 Cal.App.3d 799, 806 [94 Cal.Rptr. 347] [expressly holding to this effect without citation to Evid. Code, § 500]; see, e.g., *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704] [impliedly holding to this effect without citation to Evid. Code, § 500]; cf. *Weil* v. *Federal Kemper Life Assurance Co.* (1994) 7 Cal.4th 125, 148 [27 Cal.Rptr.2d 316, 866 P.2d 774, 32 A.L.R.5th

---

[1]Whether parties to a contract, such as an insurer and an insured under an insurance policy, may allocate the burden of proof in the event of subsequent litigation the one against the other is a question that need not be addressed here. First State and Aydin did not even purport to do so in either of the two umbrella liability insurance policies at issue.

789] [expressly holding to this effect without citation to Evid. Code, § 500, in the context of a life insurance policy]; *Searle* v. *Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 437-438 [212 Cal.Rptr. 466, 696 P.2d 1308] [same].)

I further agree that, under Evidence Code section 500, it is the insurer that bears the burden of proving that the insured's claim comes within an exclusionary clause of a liability insurance policy, and hence it is the insurer that bears the burden of proving that every fact essential thereto either exists or does not exist, as the case may be. (*Travelers Casualty & Surety Co.* v. *Superior Court, supra,* 63 Cal.App.4th at p. 1453; accord, e.g., *Garvey* v. *State Farm Fire & Casualty Co., supra,* 48 Cal.3d at p. 406 [expressly holding to this effect without citation to Evid. Code, § 500]; *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098] [same]; *Executive Aviation, Inc.* v. *National Ins. Underwriters, supra,* 16 Cal.App.3d at p. 806 [same]; cf. *Searle* v. *Allstate Life Ins. Co., supra,* 38 Cal.3d at pp. 437-438 [expressly holding to this effect without citation to Evid. Code, § 500, in the context of a life insurance policy].)

Beyond these points, however, my agreement ends.

The insuring clause of each of the two umbrella liability insurance policies issued by First State to Aydin provides, in pertinent part, that, beyond a certain retained limit, First State will "indemnify" Aydin "for . . . all sums which" Aydin "shall be obligated to pay by reason of the liability imposed upon" it "by law or liability assumed by" it "under contract or agreement for damages and expenses, because of" "personal injury" in forms including "[l]ibel, slander, defamation of character, humiliation or invasion of the rights of privacy, unless arising out of advertising activities," or "because of" "property damage" in various forms, "to which this policy applies, caused by an occurrence . . . happening anywhere in the world." (Full capitalization deleted.)

Among the exclusionary clauses of each of the two umbrella liability insurance policies at issue is what is commonly called the "qualified pollution exclusion" (e.g., Croskey et al., Cal. Practice Guide: Insurance Litigation 2 (The Rutter Group 1997) ¶ 7:2060, p. 7H-23): "This policy shall not apply" "to any liability . . . arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water

unless such discharge, dispersal, release or escape is sudden and accidental."[2]

In order to prove that its claim came within the insuring clause of either or both of the umbrella liability insurance policies at issue, Aydin had to prove, as expressly required by Evidence Code section 500, the "existence" of "each fact" "essential" thereto. For example, it had to prove that any "liability" arose out of "personal injury" or "property damage." (Full capitalization deleted.) In order to prove its claim came within the insuring clause of either or both of the policies, it also had to prove, as expressly required by the same provision, the "nonexistence" of "each fact" "essential" thereto. For example, it had to prove that any "liability" for "personal injury" in the form of "[l]ibel, slander, defamation of character, humiliation or invasion of the rights of privacy" did *not* "aris[e] out of advertising activities . . ." (Full capitalization deleted.)

On this point, the majority do not express any disagreement. Let us then pass on.

Similarly, in order to prove that Aydin's claim came within the qualified pollution exclusion of either or both of the umbrella liability insurance policies at issue, First State had to prove, as expressly required by Evidence Code section 500, the "existence" of "each fact" "essential" thereto. For example, it had to prove that any "liability" on Aydin's part arose from the "discharge, dispersal, release or escape" of pollutants. In order to prove that Aydin's claim came within the qualified pollution exclusion of either or both of the policies, it also had to prove, as expressly required by the same provision, the "nonexistence" of "each fact" "essential" thereto. For example —and this is the crux of the matter—it had to prove that "such discharge, dispersal, release or escape" was *not* "sudden" and "accidental."

On this point, the majority do indeed express disagreement. They state that First State had to prove the "existence" or "nonexistence" of "each fact" "essential" to the *main clause* of the qualified pollution exclusion—"[t]his policy shall not apply" "to any liability. . . arising out of the discharge,

---

[2]The majority state that the two umbrella liability insurance policies at issue "do not contain" "a 'qualified pollution exclusion' " "but rather . . . 'a broad exclusion from coverage for any liability resulting from pollution.' " (Maj. opn., *ante*, at p. 1192.) Whether or not the exclusion in question may properly be described as "broad" is beside the point. Let us assume that it is indeed broad, *very* broad. The fact remains: It is *not un*qualified. Therefore, it is *qualified*. It is certainly different from what is commonly called the " 'absolute pollution exclusion' " (e.g., Croskey et al., Cal. Practice Guide: Insurance Litigation 2, *supra*, ¶ 7:2085, p. 7H-28: " 'This policy shall not apply to . . . bodily injury or property damage arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . .' ").

dispersal, release or escape" of pollutants—but that Aydin had to prove the "existence" or "nonexistence" of "each fact" "essential" to the *subordinate clause*—"unless such discharge, dispersal, release or escape is sudden and accidental." They reason, in substance, as follows: The subordinate clause is an "exception" to the exclusion; as such, it is an insuring clause; and, consequently, it is Aydin that must bear the burden of proof thereon.

The majority's sundering of the qualified pollution exclusion, which is but a single sentence, into its main and subordinate clauses, and their separate allocation of the burden of proof to First State and Aydin, respectively, as to each one simply does not work. That is because the ground for their action is unsound.

First, the subordinate clause of the qualified pollution exclusion is not an "exception" to the exclusion because the main clause is not itself the exclusion. Rather, the main and subordinate clauses together constitute what is, in fact, a single sentence and what is, in law, a unitary exclusion. The main clause, which defines the general scope of the exclusion, and the subordinate clause, which identifies its precise dimensions, are necessarily interrelated—not unlike the definition of a square as a rectangle with four equal sides and the identification of the length of the sides. The following point, however, bears emphasis. The main clause is syntactically "independent," and hence can stand without the subordinate clause: "This policy shall not apply" "to any liability . . . arising out of the discharge, dispersal, release or escape" of pollutants. By contrast, the subordinate clause is syntactically "dependent," and hence cannot stand without the main clause: "unless such discharge, dispersal, release or escape is sudden and accidental."

Second, even if the subordinate clause of the qualified pollution exclusion were an "exception" to the exclusion, it could not be deemed an insuring clause. For it could not reasonably be read to impose a duty on First State to indemnify Aydin for all sums that Aydin might be obligated to pay by reason of "any liability . . . arising out of the" "sudden and accidental" "discharge, dispersal, release or escape" of pollutants. For, even in the face of "liability" on Aydin's part "arising out of . . . such discharge, dispersal, release or escape," First State might be free from any duty to indemnify Aydin for a host of reasons, as for example that the liability in question was not predicated on personal injury or property damage. No, the subordinate clause could not be deemed an insuring clause. Rather, together with the main clause it simply constitutes an exclusionary clause.

Having scrutinized the majority's reasoning and found it wanting, all we are left with is their unstated assumption that what is determinative on the

question of the allocation of the burden of proof is the word with which the subordinate clause of the qualified pollution exclusion begins — the conjunction "unless." If that were so, form would prevail over substance.

Although in phrasing the following two versions of the qualified pollution exclusion are different, in meaning they are not.

Here is the qualified pollution exclusion in its actual language: "This policy shall not apply" "to any liability . . . arising out of the discharge, dispersal, release or escape" of pollutants *"unless such discharge, dispersal, release or escape is sudden and accidental."* (Italics added.)

Here is the qualified pollution exclusion in alternative language: "This policy shall not apply" "to any liability . . . arising out of the *nonaccidental or nonsudden* discharge, dispersal, release or escape" of pollutants.

The majority do not deny that the burden of proof as to the second version of the qualified pollution exclusion would be allocated solely to First State. Indeed, they could not do so.

But the majority claim the opposite as to the first version of the qualified pollution exclusion. In doing so, however, they trip over Evidence Code section 500. In order to prove that Aydin's claim came within the qualified pollution exclusion of either or both of the umbrella liability insurance policies at issue, First State had to prove, as expressly required by that provision, the "existence" or "nonexistence," as the case may be, of "each fact" "essential" thereto. That means that it had to prove, in the main clause, that any "liability" on Aydin's part arose from the "discharge, dispersal, release or escape" of pollutants. It also means that it had to prove, in the subordinate clause, that "such discharge, dispersal, release or escape" was *not* "sudden" and "accidental." What "facts" are "essential" for the qualified pollution exclusion depends not on how the exclusion is worded, but rather on what it means.[3]

---

[3]In accord with the conclusion that I have arrived at is *Bebbington* v. *Cal. Western etc. Ins. Co.* (1947) 30 Cal.2d 157, 159 [180 P.2d 673, 1 A.L.R.2d 361], in which we held, in the context of a life insurance policy, that it is the insurer that bears the burden of proving that the insured's claim comes within an exclusionary clause, including negating the applicability of any "exception" thereto. The majority assert that *Bebbington* is "not illuminating in the present context." (Maj. opn., *ante*, at p. 1189.) They are wrong. They first imply that *Bebbington* did not mean what it said. The decision speaks for itself. They then state that, in any event, we should not adhere to *Bebbington*. They maintain that, in view of *Zuckerman* v. *Underwriters at Lloyd's* (1954) 42 Cal.2d 460 [267 P.2d 777], and *Heller* v. *Bankers Life & Cas. Co.* (1963) 220 Cal.App.2d 184 [33 Cal.Rptr. 586], *Bebbington* has little, if any, "vitality." (Maj. opn., *ante*, at p. 1189.) Not so. *Zuckerman* involved an accident insurance

In sum, because I disagree with the Court of Appeal that the superior court committed reversible error in allocating the burden of proof, I would reverse its judgment.

Werdegar, J., concurred.

**KENNARD, J.,** Dissenting.—A comprehensive general liability (hereafter sometimes referred to as a CGL) insurance policy is typically structured as a broad grant of coverage followed by a separate section imposing limitations on that coverage. The general rule is that the policyholder has the burden of proving that the loss is within the scope of coverage, while the insurance company has the burden of proving that the loss falls within any express limitation on coverage. In this case, a corporation bought two CGL policies providing, among other things, broad coverage for liability imposed on the policyholder in the event of property damage. Each policy expressly excluded liability arising from pollution (the pollution exclusion) "unless" the release of the pollutants was "sudden and accidental." The issue here is this: Does the policyholder or the insurer have the burden of proving whether the release of the pollutants was "sudden and accidental"?

The majority places the burden on the policyholder. I disagree. It is a general principle of insurance law that an insurance company relying on a

policy, whereas *Bebbington* involved a life insurance policy. *Zuckerman* merely distinguished *Bebbington* substantially on the ground that the insuring clause of an accident insurance policy is different from, and, specifically, narrower than, the insuring clause of a life insurance policy. (See *Zuckerman* v. *Underwriters at Lloyd's, supra,* 42 Cal.2d at pp. 471-474.) *Zuckerman* did not "strictly limit[]" *Bebbington* to its facts, nor does it support such an action. (Maj. opn., *ante,* at p. 1189.) A fortiori, *Zuckerman* did not "overrule[]" *Bebbington,* expressly or by implication. (*Ibid.*) A claim to that effect by the justice who had authored *Bebbington* but who dissented in *Zuckerman* (*Zuckerman* v. *Underwriters at Lloyd's, supra,* 42 Cal.2d at pp. 484-485 (dis. opn. of Carter, J.)) must be dismissed as mere hyperbole. To the extent that the *Heller* court read *Zuckerman* otherwise, it read it incorrectly.

Also in accord is *Strubble* v. *United Services Auto. Assn.* (1973) 35 Cal.App.3d 498 [110 Cal.Rptr. 828], in which the Court of Appeal held, in the context of an all-risks insurance policy, that it is the insurer that bears the burden of proving that the insured's claim comes within an exclusionary clause, including negating the applicability of any "exception" thereto. The majority assert that *Strubble* is "not instructive here." (Maj. opn., *ante,* at p. 1190.) Again, they are wrong. To be sure, *in its insuring clause* an all-risks insurance policy is different from other kinds of insurance policies, such as umbrella liability insurance policies, with which we are concerned in this case. But, *in its exclusionary clauses,* it is not.

Finally, in accord is Couch on Insurance, an authoritative treatise, which implies broadly that it is the insurer that bears the burden of proving that the insured's claim comes within an exclusionary clause, including negating the applicability of any "exception" thereto. (19 Couch on Insurance.(2d ed. 1983) § 79:385, p. 338.) The majority assert that this is not so. (Maj. opn., *ante,* at p. 1191, fn. 2.) Yet again, they are wrong. True, Couch notes the existence of cases to the contrary. (19 Couch on Insurance, *supra,* § 79:385, p. 338; *id.* (1998 pocket supp.) p. 27.) But that is all. And that is not enough.

separately stated limitation of coverage must prove that the loss is within the limitation provision. Applying that principle, I would hold that the insurer must demonstrate the inapplicability of any limitation contained in the exclusion clause, however that limitation may be phrased. Thus, here the insurer would have to prove that the release of the pollutants was not sudden and accidental.

I

Aydin Corporation (Aydin) made and repaired electrical transformers at a plant in Palo Alto. Toxic chemicals used in the process and waste materials were stored in underground tanks and above the ground in metal drums. In 1980 Aydin discovered that the land and groundwater at the site were contaminated with polychlorinated biphenyl (PCB), a highly toxic pollutant. Sludge leaking from holes in the underground tanks contained PCB. When the California Department of Health Services learned of the contamination, it issued a remedial action order directing Aydin to clean up the site.

Aydin was insured with First State Insurance Company (First State). Each of the two CGL policies that Aydin had purchased from First State promised to indemnify Aydin for "all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law . . . because of: [¶] . . . [¶] B. PROPERTY DAMAGE, as hereinafter defined . . . [¶] to which this policy applies, caused by an OCCURRENCE, as hereinafter defined . . . ." The policies define an "OCCURRENCE" as "an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in . . . PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. . . ."

Under the heading, "EXCLUSIONS," each policy precluded coverage for "any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land . . . *unless such discharge, dispersal, release or escape is sudden and accidental.*" (Italics added.)

Aydin brought an action for declaratory relief to determine the extent of the coverage under the policies. First State contended there was no coverage because the release of pollutants from Aydin's underground storage tanks was not "sudden and accidental," as required by the policy.

The case was tried before an advisory jury. The trial court instructed the jury that First State had to prove that Aydin's liability arose from the

discharge of pollutants, and that the discharge was not sudden and accidental. The advisory jury found in Aydin's favor, and the trial court adopted its findings. The Court of Appeal reversed, holding that Aydin had the burden of proving that the discharge of PCB was "sudden and accidental" within the meaning of the policy language.

## II

To establish coverage under an insurance policy, the insured must show that the occurrence on which the claim is based falls within the scope of basic coverage. (*Weil* v. *Federal Kemper Life Assurance Co.* (1994) 7 Cal.4th 125, 148 [27 Cal.Rptr.2d 316, 866 P.2d 774, 32 A.L.R.5th 789]; *Searle* v. *Allstate Life Ins. Co.* (1985) 38 Cal.3d 425, 438 [212 Cal.Rptr. 466, 696 P.2d 1308].) The insurance company then has the burden of proving that the particular claim is excluded by some other provision of the policy. (*Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704]; *Searle* v. *Allstate Life Ins. Co., supra,* at pp. 437-438; *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098].) The latter rule has existed for some 100 years. (See e.g., *Dennis* v. *Union Mut. Life Ins. Co.* (1890) 84 Cal. 570, 572 [24 P. 120]; *Western Assur. Co. of Toronto* v. *J. H. Mohlman Co.* (2d Cir. 1897) 83 Fed. 811, 818; *Meadows* v. *Pacific Mut. Life Ins. Co. of California* (1895) 129 Mo. 76 [31 S.W. 578, 582-583]; see cases cited in 33 C.J., Insurance, § 832, p. 111, fn. 95.) Although many decisions have relied on this rule, only rarely have courts discussed the reasons underlying it. Perhaps the most helpful explanation can be found in *Jewelers Mutual Insurance Company* v. *Balogh* (5th Cir. 1959) 272 F.2d 889. There, the federal reviewing court observed that when an insurer sells a policy purporting to provide broad coverage for all but certain excluded risks, to require the policyholder to affirmatively establish the nonexistence of each of the listed exclusions would be inconsistent with the comprehensive nature of the policy. In the words of the court: "If the insurer's contention [that the policyholder has the burden of proving policy exclusions] is sound, then as a condition precedent to liability, the assured would have to establish by a preponderance the negative of each of these manifold exceptions. . . . Instead of the policy affording coverage against all causes of damage except those specifically excluded, it would amount only to a named perils cover since the assured to negative the exception would have to establish . . . [an] event not specifically excluded." (*Id.* at p. 892.) Another federal decision succinctly noted that if the policyholder had the burden of proving that coverage was not expressly excluded, "the inclusive character of the coverage of the insurance policy would be a delusion, and a snare." (*Chase Rand Corporation* v. *Central Ins. Co.* (S.D.N.Y. 1945) 63 F.Supp. 626, 629.)

Often, as here, an exclusion clause itself contains restrictions limiting the scope of the exclusion. In that situation, does the general rule that an insurance company must establish the applicability of an exclusion also require it to negate any limitations contained in the exclusion clause? A leading insurance treatise has this to say: "In many instances, a policy exception is itself subject to exceptions or limitations. When this is the case, the insurer in proving that the loss comes within the exception must also proceed further to show that the exception or limitation to the exception does not preclude the application of the exception. Consequently, if an exception of liability for injuries intentionally inflicted does not extend to all injuries so inflicted . . . the [insurer] does not sustain its burden of proof unless it negatives the exception in the exemption." (19 Couch on Insurance (2d ed. 1983) § 79:385, p. 338.) Thus, the general rule is that the insurance company has the burden of proving that limitations or exceptions to an excluded risk are inapplicable. In my view, this rule makes sense, as I discuss below.

Whether to describe the scope of a coverage limitation by phrasing it as an exception is generally a question of semantics, not substance, as this case illustrates. The two CGL policies at issue here excluded coverage for property damage liability resulting from the discharge of pollutants "unless such discharge . . . is sudden and accidental." The majority concludes that this phrasing makes the "sudden and accidental" language a specific exception to the general pollution exclusion. Yet if the policies had instead excluded from coverage "any gradual or intentional discharge of pollutants," this limitation would serve to *define* the exclusion—thus, under well-established insurance law, placing the burden of proof on the insurance company—and could not be characterized as an *exception* to it. Although there would be no change in meaning, no change in substance, the majority would allow a strictly semantic variation to determine which party had the burden of proof.

Aydin's brief in this court furnishes another illustration. If a health insurance policy excludes from coverage "pre-existing heart disease," the term "pre-existing" defines the exclusion and so, under well-established insurance law, an insurer seeking to rely on the exclusion to deny coverage for expenses incurred to treat a heart ailment would have the burden of proving that the insured had already contracted the disease when the policy was purchased. Yet if, as the majority holds today, a policyholder must prove the existence of any exception to an excluded risk, a health insurer could shift this burden of proof to the insured merely by a subtle rephrasing of the policy to exclude coverage for "*all* heart disease, *unless* it develops after the inception of the insurance policy."

To be sure, an insurer generally has a right to decide what coverage to offer, and an insurer may control the scope of coverage, and the obligation it

thereby incurs, by the provisions for coverage and exclusions from coverage it states in the policy. To protect the reasonable expectations of those who purchase insurance policies, however, courts have rightly insisted that any exclusions to broadly worded coverage provisions be clearly expressed, and courts have resolved ambiguities as to the meaning of exclusionary provisions in favor of coverage. In addition, because allocation of the burden of proof effectively determines the scope of coverage when evidence of the fact at issue is nonexistent or closely balanced, courts have also insisted that the insurer, and not the policyholder, bear the burden of proving the existence of facts necessary to establish exclusions to broadly worded coverage provisions. Permitting an insurer to use subtle changes in the wording of policy exclusions to manipulate allocations of the burden of proof significantly weakens the protections afforded policyholders by these established principles of insurance law. The rule allocating to the insurer the burden of proving *both* exclusions *and* the nonexistence of any qualifications or exceptions to those exclusions is fundamentally more consistent with the spirit of established insurance law.

Also, not to apply these established principles of insurance law could considerably and unnecessarily increase the cost of litigation simply to determine whether subtly worded limitations to coverage contained in an exclusion clause have shifted to the policyholder the burden of proving such limitations.[1] Theoretically, policy language can be subdivided endlessly, piling exception upon exception, shifting the burden of proof back and forth, back and forth, with each successive exception. Such shifting increases the cost and complexity of litigation, outweighing any conceivable benefit to be gained from shifting the burden of proof.

For the reasons set forth above, I would hold that once a policyholder has shown that a claim falls within the policy's basic grant of coverage, the insurer must prove any separate limitation on that coverage, no matter how that limitation may be phrased. Therefore, here First State would have the burden of establishing that the chemical contamination of Aydin's property did not result from a "sudden and accidental" discharge of pollutants from Aydin's underground storage tanks.

### III

In support of its holding, the majority relies on five decisions from other jurisdictions that have placed on the policyholder the burden of proving that

---

[1]Thus, although the careful syntactic parsing of the policy language in Justice Mosk's dissenting opinion may be analytically sound, allocation of the burden of proof should not turn on such subtle grammatical distinctions.

the discharge of pollutants was "sudden and accidental." (*E.I. du Pont de Nemours* v. *Allstate Ins.* (Del. 1997) 693 A.2d 1059, 1061; *Highlands Ins. Co.* v. *Aerovox Inc.* (1997) 424 Mass. 226 [676 N.E.2d 801, 804-805]; *SCSC Corp.* v. *Allied Mut. Ins. Co.* (Minn. 1995) 536 N.W.2d 305, 314; *Northville Industries* v. *Nat. Union Ins.* (1997) 89 N.Y.2d 621 [657 N.Y.S.2d 564, 679 N.E.2d 1044, 1048-1049]; *Sinclair Oil Corp.* v. *Republic Ins. Co.* (Wyo. 1996) 929 P.2d 535, 543.)[2] I find these decisions unpersuasive.

Two of the decisions on which the majority relies (*E.I. du Pont de Nemours* v. *Allstate Ins., supra,* 693 A.2d at p. 1061; *Sinclair Oil Corp.* v. *Republic Ins. Co., supra,* 929 P.2d at p. 543) offer no reason whatsoever for shifting the burden of proof to the policyholder. Two others (*SCSC Corp.* v. *Allied Mut. Ins. Co., supra,* 536 N.W.2d at p. 314; *Northville Industries* v. *Nat. Union Ins., supra,* 679 N.E.2d at pp. 1048-1049) dispose of the issue in a single paragraph, without extended analysis. The fifth decision (*Highlands Ins. Co.* v. *Aerovox Inc., supra,* 676 N.E.2d at pp. 804-805) merely adopts the reasoning of the federal reviewing court in *Aeroquip Corp.* v. *Aetna Cas. and Sur. Co., Inc.* (9th Cir. 1994) 26 F.3d 893, 895 (*Aeroquip*). Because the majority here too relies on *Aeroquip*, I now turn to a discussion of that case.

*Aeroquip* involved the same issue that we consider here: When a comprehensive general liability policy's clause excluding certain pollution coverage contains an exception for the "sudden and accidental" discharge of pollutants, is it the insurer or the policyholder that must prove the exception to the exclusion? (*Aeroquip, supra,* 26 F.3d 893.) The case arose under California law, but this court had never considered the issue. In these circumstances, "a federal court must predict how the highest state court would decide the issue . . . ." (*In re Kirkland* (9th Cir. 1990) 915 F.2d 1236, 1239.) The federal court in *Aeroquip* concluded that this court would likely impose the burden on the policyholder. (*Aeroquip, supra,* at p. 895.) It cited three reasons for its conclusion.

First, the *Aeroquip* court reasoned that imposing on the policyholder the burden of proving the "sudden and accidental" limitation on the pollution

[2]The majority also notes that some federal courts have predicted that other state high courts as well would place the burden on the insured. (Maj. opn., *ante,* at p. 1190.) Other federal decisions, however, have predicted that certain state high courts would place the burden on the *insurer.* (*EDO Corp.* v. *Newark Ins. Co.* (D.Conn. 1995) 878 F.Supp. 366, 371 [predicting Connecticut would place burden on insurer]; *A.Y. McDonald Industries* v. *INA* (N.D. Iowa 1993) 842 F.Supp. 1166, 1171 & fn. 2 [predicting Iowa would place burden on carrier]; *U.S. Fidelity & Guar.* v. *Morrison Grain Co.* (D.Kan. 1990) 734 F.Supp. 437, 442-443 [predicting Kansas would place burden on insurer]; see also *State of N.Y.* v. *Blank* (2d Cir. 1994) 27 F.3d 783, 788-789 [wrongly predicting New York would place burden on insurer]; *New Castle County* v. *Hartford Acc. and Indem. Co.* (3d Cir. 1991) 933 F.2d 1162, 1181-1182 [wrongly predicting Delaware would place burden on insurer].)

exclusion would be consistent with the rule that the insured has the initial burden of proving that an occurrence is within the scope of the basic coverage. This is true, the court said, because "[t]he 'sudden and accidental' exception creates coverage where it would otherwise not exist . . ." (*Aeroquip, supra*, 26 F.3d at p. 895.) The majority in this case echoes that view, stating that the "sudden and accidental" limitation in the exclusion clause "reinstates" coverage (maj. opn., *ante*, at p. 1192) and therefore should be "construed as a coverage provision" (*id.* at p. 1193).

*Aeroquip* and the majority are both wrong in concluding that the "sudden and accidental" limitation creates or reinstates coverage. It does neither. All it does is to place a limit on the scope of the pollution exclusion. To construe this limitation as a coverage clause runs counter to "the basic principle that exclusion clauses *subtract* from coverage rather than grant it." (*Weedo* v. *Stone-E-Brick, Inc.* (1979) 405 A.2d 788, 795 [81 N.J. 233]; see also *Sturla, Inc.* v. *Fireman's Fund Ins. Co.* (1984) 67 Hawaii 203 [684 P.2d 960, 965]; *Continental Cas. Co.* v. *Pittsburgh Corning Corp.* (7th Cir. 1990) 917 F.2d 297, 300.) Here, the events for which Aydin seeks coverage are within the broad grant of coverage of the comprehensive policies. Therefore, Aydin is entitled to that coverage unless the insurer shows that the loss falls within the pollution exclusion.

Second, according to the federal court in *Aeroquip*, to require the insurer to prove that the discharge of pollutants was not "sudden and accidental" would give policyholders "an incentive to avoid finding out whether pollutants are being gradually discharged, because preservation of ignorance would increase the likelihood of insurance coverage." (*Aeroquip, supra*, 26 F.3d at p. 895.) But it is farfetched to assume that policyholders decide upon a course of conduct based upon the apportionment of the burden of proof in the exclusion clauses of their liability insurance policies. Even if they did, the onerous consequences of allowing pollution to continue would far outweigh any potential benefit to policyholders from the speculative possibility that their insurers would ultimately be unable to defeat coverage. Almost inevitably, that pollution will be discovered, leading to governmental cleanup orders. The longer pollution continues unabated, the more difficult and costly it will be to comply with these orders.

Third, *Aeroquip* asserts that requiring the policyholder to prove the limitation at issue is appropriate because it "places the burden on the party who will generally have access to facts that show the discharge of pollutants was sudden and unexpected." (*Aeroquip, supra*, 26 F.3d at p. 895.) I find this reasoning unpersuasive. True, policyholders may have better access to the facts leading to the loss because they have better access to their own insured

property than insurers. But if such access were the sole basis for apportioning burdens of proof, then policyholders would always have the burden of negating policy exclusions. That is not the law, however. As the majority acknowledges, it is "well established" that the insurer, not the policyholder, must prove that a loss within the broad coverage grant falls within an excluded risk. (Maj. opn., *ante*, at p. 1188.)

The majority in this case adopts the reasoning of *Aeroquip, supra*, 26 F.3d 893. In addition, the majority points to a fourth reason for its holding, namely, implementation of the parties' intent. It states: "The fact that different policy language might result in a different allocation of the burden of proof should hardly come as a shock. Rather, it arises from the parties' general freedom to contract as they deem fit." (Maj. opn., *ante*, at pp. 1192-1193.) I have no quarrel with the majority's proposition that parties have the freedom to contract in any way they like. But, as I pointed out in the preceding paragraph, under general principles of law the burden of proof is on the insurance company to establish that a particular claim is excluded. Here, the parties did not agree to a different allocation of the burden of proof. Therefore, First State rather than Aydin should have the burden to prove that the discharge of pollutants was not "sudden and accidental." (See *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 822 [274 Cal.Rptr. 820, 799 P.2d 1253] ["Because the insurer writes the policy, it is held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage."]; *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 808 [180 Cal.Rptr. 628, 640 P.2d 764] [exclusionary clauses are construed narrowly against the insurer].)[3]

CONCLUSION

A comprehensive general liability policy is expected to provide broad, all-encompassing coverage. " 'Obviously the very name of the [comprehensive general liability] policy suggests the expectation of maximum coverage. Consequently the comprehensive policy has been one of the most preferred by businesses and governmental entities over the years because that policy

---

[3]The majority's holding may in some cases conflict with Evidence Code section 520. That statute provides, "The party claiming that a person is guilty of crime or wrongdoing has the burden of proof on that issue." The intentional, unauthorized discharge of dangerous chemicals onto the land is a wrongful and sometimes criminal act. To the extent that First State here asserts that the "sudden and accidental" limitation on the pollution exclusion is inapplicable because Aydin intentionally rather than accidentally discharged PCB onto its property, First State may, under Evidence Code section 520, have the burden of establishing the truth of this allegation. (But see *FMC Corp.* v. *Plaisted & Companies* (1998) 61 Cal.App.4th 1132, 1160 [72 Cal.Rptr.2d 467] [section 520 inapplicable to violation of "essentially regulatory" statutes prohibiting toxic contamination, when much of the contamination occurred before the statutes were enacted].) Because the parties have not addressed this issue, I do not consider it further.

has provided the broadest coverage available. All risks not expressly excluded are covered, including those not contemplated by either party.'" (*Quaker State Minit-Lube, Inc.* v. *Fireman's Fund Ins. Co.* (D.Utah 1994) 868 F.Supp. 1278, 1295.)

Before today's decision, a business entity purchasing a comprehensive general liability policy could reasonably expect that to obtain the policy's promise of broad protection from liability, it had only to show that it had incurred such liability, and that the insurance company could defeat the coverage only by showing that the claim fell within one of the policy's limitations or exclusions. The majority's holding frustrates this expectation, and it gives insurers an unanticipated and unwarranted windfall.

I would reverse the judgment of the Court of Appeal.

Werdegar, J., concurred.

Respondent's petition for a rehearing was denied October 14, 1998, and the opinion was modified to read as printed above. Mosk, J., Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.