**Zoltan E. HOROSNY, Plaintiff,**

v.

**OLD AMERICAN INSURANCE CO., Defendant.**

**No. CV 97–8403–CAS.**

United States District Court,
C.D. California,
Western Division.

Dec. 15, 1998.

Zoltan E. Horosny, Sherman Oaks, CA., Tien V. Doan, Westminster, CA., Galton & Helm, Stephen H. Galton, Michael B. Bernacchi, Tina Fisher, Los Angeles, CA, for Plaintiff.

## ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SNYDER, District Judge.

## I. INTRODUCTION

On September 10, 1997, plaintiff filed suit in Los Angeles Superior Court against Old American Insurance Co., alleging breach of contract and breach of the covenant of good faith and fair dealing. Defendant timely removed the case to this court on the grounds of diversity of citizenship, pursuant to 28 U.S.C. § 1332(a). Defendant now moves for summary judgment or, in the alternative, summary adjudication.

## II. FACTUAL BACKGROUND

At all times relevant to this litigation, plaintiff owned two insurance policies issued by defendant: an intensive care unit hospitalization policy ("the ICU policy") and a limited accident policy. It is undisputed that, at all relevant times, both policies were in effect and plaintiff was the named insured on each policy.

### A. The ICU Policy

The ICU policy pays the insured $75.00 for each day of confinement in a hospital's intensive care unit. The ICU policy defines "intensive care unit" as:

> a part of a hospital (1) specifically designated as an Intensive Care Facility or Intensive Care Unit or Intensive Care Cardiac Unit or Intensive Care Burn Unit and (2) permanently equipped and staffed to provide more extensive care for critically ill or injured patients than that available in the general hospital room or ward. Such care is to include constant observation by a staff of registered graduate nurses (R.N.) whose duties are confined to such part of the hospital.

Decl. Cathy Law in Supp. Def.'s Mot. Summ.J., Ex. 1.

The ICU policy defines "confinement" as:

> necessary residence as an inpatient in a hospital beginning on or after the Effective Date of this policy, and while it is in force, resulting from sickness or injury. Such confinement must be authorized by a physician. Each "day" of confinement shall include overnight residence for which a charge is made.

*Id.*

In November 1996, plaintiff submitted a claim to defendant, seeking benefits under the ICU policy, arising from plaintiff's admission to St. Vincent's Medical Center ("St.Vincent's") in August 1996. Plaintiff originally claimed that he had been confined in the cardiac intensive care unit from August 6, 1996, through August 8, 1996. As part of its routine investigation of the claim, defendant contacted St. Vincent's and requested documents relating to plaintiff's hospitalization. The records indicate that plaintiff was admitted to St. Vincent's on August 7, 1996, and discharged on August 8, 1996. *See id.,* Ex. 5. *See also* Pl.'s Opp., Ex. 1 (same evidence submitted by plaintiff). The itemization of charges does not include any charge for a room during plaintiff's hospital stay.

On February 6, 1997, defendant denied plaintiff's claim, on the ground that he had not been confined in an intensive care unit within the meaning of the ICU policy. On July 14, 1997, plaintiff sent a letter to defendant appealing its decision to deny his complaint. *See* Decl. Cathy Law, Ex. 8. Plaintiff's letter described his stay in terms which suggested a dire situation in which he "stopped breathing with a catheter inserted into my heart chambers." *Id.* Plaintiff's letter went on to assert that "I was somehow revived, and rushed to an Intensive or Coronary Care Unit of the same Hospital, connected to all kind of life supporting and monitoring medical equipment, supervised by doctors and registered medical personnel 24 hours a day, until I was discharged. If that was not 'INTENSIVE CARE', I can not imagine somthing [sic] else as such." Based on plaintiff's letter, defendant sent plaintiff $75.00. Plaintiff insists that defendant owes an additional $75.00, apparently based on the theory that, because he was in the hospital from August 7 through August 8, 1996, he should be paid for two days.[1]

### B. *The Limited Accident Policy*

The limited accident policy pays the insured $100.00 for each month that the insured is totally disabled, or $50.00 for each month that the insured is partially disabled, as a result of a covered accidental bodily injury. The policy defines disability as follows:

(A) Total Disability.

When injuries sustained by the Insured as the result of any covered Accident shall, from the date of the accident, cause the Insured to be disabled so as to be prevented from performing every important daily duty of his occupation, the Company will pay for each day of such disability, not exceeding the Maximum Total Disability Period, a benefit at the Monthly Total Disability rate, both as shown in the Benefits Schedule. If the Insured is retired or unemployed, the phrase "important daily duty" as used in this and in the following

provision shall mean his usual and normal daily activities.

(B) Partial Disability.

When injuries sustained by the Insured as the result of any Covered Accident shall from the date of the accident or immediately following a period of total disability, cause the Insured to be disabled so as to be prevented from performing a substantial part, but not all, of the important daily duties of his occupation, the Company will pay for each day of such disability, not exceeding the Maximum Partial Disability Period, a benefit at the Monthly Partial Disability Benefit rate both as shown in the Benefits Schedule.

Decl. Cathy Law, Ex. 2.

The policy defines accidental bodily injury as:

injury sustained by the Insured while this policy is in force as the result of any of the following categories of Covered Accidents:

. . . .

Power Mowers and Miscellaneous Vehicles. Any accident occurring while operating a power lawn mower, whether or not such mower is designed to be ridden while in operation, or any accident occurring while riding on any bicycle or golf cart.

*Id.*

The General Provisions of the policy require the insured to furnish written proof of loss for any claim submitted under the policy. *See id.*

### 1. *Lawn Mower Accident Claim*

On July 11, 1997, plaintiff submitted a claim to defendant seeking benefits under the limited accident policy, for injuries he allegedly sustained on May 12, 1997, while using a power lawn mower. Plaintiff alleged that, while mowing the lawn, he slipped and fell, injuring his right shoulder, arm, foot, neck and back. Plaintiff, who is and was at that time retired, claims that the injuries caused him to become totally disabled.

---

**1.** Plaintiff has apparently abandoned his original position that he was admitted on August 6. *See* Decl. Zoltan E. Horosny ("On or about August 7, 1996. I have spent nearly 2 days in Hospital. . . .

Until now, no additional money has been paid regarding to my 2 days stayed in the hospital on August 7, 8, 1986[sic].").

Plaintiff listed his treating physician as Dr. Jay Sullivan.

Defendant wrote to Dr. Sullivan, requesting records regarding plaintiff's treatment for his injuries. Dr. Sullivan provided records of plaintiff's visits on May 13, 1997, May 19, 1997, May 21, 1997, May 28, 1997, July 11, 1997, and August 6, 1997. Of the six visits reported, only the last one references the injuries and the accident on which plaintiff's claim is based. The reports from the first five visits are all related to a May 13, 1997 gastrointestinal diagnostic procedure and follow-ups thereto. *See* Decl. Cathy Law, Ex. 15. *See also* Decl. Michael Bernacchi, Ex. D, at 46 (Depo. Test. of Dr. Sullivan).

On October 2, 1997, defendant denied plaintiff's claim on the ground that there was no evidence that plaintiff was disabled as a result of a covered accident. Plaintiff alleges that the denial was a breach of the insurance contract.

### 2. *Bicycle Accident Claim*

On or about September 17, 1997, plaintiff submitted another claim to defendants seeking benefits under the limited accident policy for injuries he allegedly sustained on May 6, 1996, after falling off a bicycle. Plaintiff alleged in this claim that, while he was riding his bicycle in his neighborhood, a dog lunged at him, knocking him over. He further alleged that, as a result of the fall, he injured his right shoulder, back and neck, and was totally disabled. Plaintiff listed his treating physicians as Dr. Sullivan and Dr. Dini. He also listed a physical therapist named Luk. *See* Decl. Cathy Law, Ex. 13.

Defendant requested documentation from each of the medical personnel listed by plaintiff. According to Dr. Sullivan's deposition testimony, plaintiff visited Dr. Sullivan's office on the day of the alleged accident for a follow-up on a procedure that had been performed previously. At that visit, the doctor also took an x-ray of plaintiff's right shoulder because plaintiff complained of shoulder pain. The plaintiff apparently stated no reason for the shoulder pain and the doctor found that the pain was likely due to a chronic rotator cuff problem. *See* Decl. Michael Bernacchi, Ex. D, at 28 (Depo. Test. of Dr. Sullivan).

According to Dr. Sullivan, the plaintiff visited him again on May 15, 1996 for a follow-up on a prior procedure unrelated to his shoulder, and plaintiff again.did not mention a bicycle accident. *See id.* The next visit was on May 20, 1996. At that visit, plaintiff apparently told the doctor that he was experiencing pain in his right shoulder and that he had been experiencing that pain for a year. Again, the doctor noted that plaintiff did not state a cause for the shoulder pain. *See id.*

Defendant received records from orthopedic specialist Dr. Dini, which indicated that plaintiff visited him on May 29, 1996 for treatment of "chronic right shoulder pain." *See* Decl. Cathy Law, Ex. 22. *See also* Decl. Michael Bernacchi, Ex. E, at 17 (Depo. Test. Dr. Ali Dini).

Defendant also received records from Joseph Luk Physical Therapy which do not indicate treatment for a shoulder injury until July 1997. *See* Decl. Cathy Law, Ex. 19. A status report prepared by Joseph Luk, dated August 8, 1997, indicates that plaintiff was being treated for a chronic rotator cuff tear. The status report also states "Mowing lawn and fell on right shoulder recently to increase pain." *See id.* There is no mention of any injury resulting from a bicycle accident. Defendant has also presented a copy of a patient information and history sheet from Joseph Luk Physical Therapy, signed by plaintiff on January 13, 1997. On this information sheet, plaintiff wrote that his chief complaint was "r. shoulder & neck & back pain." The next question asks "Accident or job related" to which plaintiff responded "no." Decl. Michael Bernacchi, Ex. A.

On October 2, 1997, at the same time it denied the lawn mower accident claim, defendant also denied plaintiff's claim regarding a bicycle accident on the ground that there was no evidence that plaintiff was disabled as a result of a covered accident. Plaintiff alleges that this denial was also a breach of the insurance contract.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material

fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pac. Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## IV. ANALYSIS

### A. *Breach of Contract*

In a breach of contract claim brought by an insured against an insurance company, "[t]he burden is on [the] insured to establish that the occurrence forming the basis of [the] claim is within the basic scope of insurance coverage." *Aydin Corp. v. First State Ins. Co.,* 18 Cal.4th 1183, 77 Cal.Rptr.2d 537, 539, 959 P.2d 1213 (Cal.1998); *Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 226 Cal.Rptr. 435, 437 (Ct.App.1986); *Goomar v. Centennial Life Ins. Co.,* 855 F.Supp. 319, 323 (S.D.Cal.1994). If the plaintiff meets this burden, the burden shifts to the insurer to prove that the claim is excluded. *See Aydin Corp.,* 77 Cal.Rptr.2d at 539.

In this summary judgment motion, defendant has produced evidence which shows that plaintiff's insurance claims were not within the scope of coverage and that no triable issue of fact exists with regard to the claims. Therefore, plaintiff must bring forth evidence which indicates that there is at least a triable issue of fact with regard to coverage. *See, e.g., Goomar,* 855 F.Supp. at 324.

### 1. *The ICU Policy*

■ The Court finds that plaintiff has not met his burden with regard to coverage under the ICU policy. Even viewing all the evidence in the light most favorable to plaintiff, it is evident that plaintiff's stay at St. Vincent's does not give rise to the payment of benefits beyond the $75.00 defendant has already paid. Plaintiff attempts to argue that, because his stay extended beyond twenty-four hours, he should be compensated for more than one day. This argument is unavailing. First, the evidence does not support plaintiff's claim that he was ever confined to an intensive care unit within the meaning of the policy. Second, the policy only pays for confinement for which a charge is made, and there is no evidence that plaintiff was charged a room charge of any kind by St. Vincent's. Furthermore, even assuming that plaintiff was confined in an intensive care unit, confinement is not defined in the policy in terms of number of hours spent in an

intensive care unit. Rather, a day of "confinement" which gives rise to benefits is measured in terms of a day which includes an overnight stay. It is uncontroverted that plaintiff spent only one night in the hospital. Because plaintiff has already been paid $75.00 for a day of confinement, there is no way a reasonable finder of fact could find that defendant owes any additional benefits on this claim. Therefore, defendant's motion for summary judgment is granted with respect to breach of the ICU policy.

### 2. The Limited Accident Policy

■ The Court finds that plaintiff has not met his burden with regard to either of the claims brought under the limited accident policy. It is uncontroverted that plaintiff had a chronic problem with his right shoulder which predated either of the alleged accidents. Although this fact in itself does not preclude coverage, it does tend to show that the shoulder injury was not caused by either alleged accident. Furthermore, when plaintiff visited Dr. Sullivan the day after the alleged lawn mower accident, there was no mention of any accident and, indeed, no mention of any injury;[2] the visit was for a completely different purpose. When plaintiff visited Dr. Sullivan the day of the alleged bicycle accident, plaintiff did complain of shoulder pain, but there was no mention of an accident and the doctor's finding was that plaintiff's shoulder pain was a chronic, rather than an acute problem. These facts tend to suggest that the accidents did not happen as plaintiff alleges.

■ Even if it is assumed that the accidents did occur as plaintiff alleges, there is no showing that plaintiff was disabled as a result of such accidents. First, plaintiff has produced no evidence that he was disabled. Indeed, his declaration is silent on this point. There is a doctor's statement that plaintiff had impaired mobility in his shoulder, but there is no statement by the doctor that this impairment rose to the level of impairment required by the policy to trigger the defen-

dant's duty to pay. Moreover, plaintiff has brought forth no evidence of a causal connection between any injury caused by accident and any disability. Rather, the evidence shows that plaintiff's reduced mobility was due to the chronic problem with his shoulder, which predated the first alleged accident by at least a year. Under the limited accident policy, defendant is liable only for disability caused by a covered accident. Given the number of medical problems experienced by plaintiff during the relevant periods, it is beyond the realm of possibility that plaintiff's disability, if any, was caused by injuries that he did not even bother to mention to any physician.

On this record, the Court finds that plaintiff has not met his burden and that a reasonable finder of fact would not be able to find for plaintiff. Therefore, defendant's motion for summary judgment is granted as to claims brought under the limited accident policy.

### B. Breach of the Duty of Good Faith and Fair Dealing

■ An insurer is liable for breach of the implied covenant of good faith and fair dealing if its denial of coverage was unreasonable. See Lunsford v. American Guarantee & Liability Ins. Co., 18 F.3d 653, 656 (9th Cir.1994). Denial of coverage is not unreasonable if a genuine issue existed as to whether or not the claim should have been paid. Where the insurer has "investigated the insureds' claim and based its refusal to [pay] on that information and a reasonable construction of the policy," the insurer has not acted in bad faith. Id.

Based on the Court's finding that defendant is not liable to plaintiff for any of the three claims, there is no basis for finding that defendant's denial of the claims was unreasonable. See Waller v. Truck Ins. Exch., 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). Therefore, defendant's motion for summary judgment as to the claim

---

**2.** There is evidence that, in August 1997, some three months after the lawn mower accident was alleged to have occurred, plaintiff told Dr. Sullivan that he had injured his shoulder while mowing the lawn. This revelation, however, was made within two days after defendant had informed plaintiff that it would be contacting the doctor to verify plaintiff's claim.

for breach of the covenant of good faith and fair dealing is granted.

## V. CONCLUSION

The Court hereby grants defendant's motion for summary judgment as to all claims.

## JUDGMENT

Pursuant to the Court's memorandum and order dated December 14, 1998, granting defendants' motion for summary judgment, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the defendant shall have judgment against plaintiff and plaintiff shall take nothing by his complaint.