Filed 6/6/14; pub. order 6/26/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MEERA UPASANI et al., | |
| Plaintiffs and Appellants, | G048399 |
| v. | (Super. Ct. No. 30-2011-00531846) |
| STATE FARM GENERAL INSURANCE COMPANY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory Munoz, Judge.  Affirmed.

Abeltin & Migoya and James B. Abeltin for Plaintiffs and Appellants.

LHB Pacific Law Partners, Michael J. McGuire and Matthew F. Batezel for Defendants and Respondents.

\*       \*       \*

Meera Upasani and Mohan Upasani, policyholders of State Farm General Insurance Company and State Farm Fire and Casualty Company (collectively, State Farm), were sued for conspiring to aid a mother in abducting her son from his father. State Farm denied the Upasanis' tender of the defense of that action because abduction claims were not covered claims under the terms of the State Farm policies. The Upasanis sued, and the trial court granted State Farm's motion for summary judgment.

We affirm. State Farm offered admissible evidence showing the claimed loss suffered in the underlying case was not within the insuring agreement. The Upasanis failed to establish a triable issue of material fact.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Avinash Kulkarni filed a lawsuit against the Upasanis, among others, for violation of Civil Code section 49, subdivision (a), negligence per se, intentional infliction of emotional distress, and negligent infliction of emotional distress. Kulkarni alleged the Upasanis conspired with Kulkarni's wife to abduct Kulkarni's infant son to India. A jury returned a special verdict in favor of the Upasanis. Kulkarni appealed from the judgment entered against him; this court affirmed the judgment. (A full recitation of the facts and procedural history of the underlying case can be found in this court's unpublished opinion in *Kulkarni v. Upasani* (July 19, 2013, G045914).)

During the pendency of the underlying case, the Upasanis tendered the defense of the claims against them to their insurance carrier, State Farm. Three different condominium unitowners or homeowners policies covered the Upasanis during the period of time in which the acts alleged in Kulkarni's complaint occurred. State Farm denied coverage because "[n]one of the allegations against [the Upasanis] arise out of accidental

conduct; therefore, there is no occurrence and no duty to defend or indemnify [the Upasanis] in this action."

The Upasanis sued State Farm for breach of contract and breach of the covenant of good faith and fair dealing. State Farm filed a motion for summary judgment, which the trial court granted; judgment was entered in State Farm's favor. The Upasanis timely appealed.

DISCUSSION

We review an order granting summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "To prevail on the motion, a defendant must demonstrate the plaintiff's cause of action has no merit. This requirement can be satisfied by showing either one or more elements of the cause of action cannot be established or that a complete defense exists. [Citations.] If the defendant meets this requirement, the burden shifts to the plaintiff to demonstrate a triable issue of material fact exists. [Citations.]" (*We Do Graphics, Inc. v. Mercury Casualty Co.* (2004) 124 Cal.App.4th 131, 135-136.)

The first question to be addressed in any case of breach of an insurance contract or insurance bad faith is whether the claimed loss was within the insuring agreement. "The burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage." (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1188.) Each of the potentially applicable policies provided coverage to the Upasanis "[i]f a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage

3

applies, caused by an occurrence." (Boldface omitted.) "Occurrence" was defined in each policy as "an accident . . . which results in: [¶] a. bodily injury; or [¶] b. property damage; [¶] during the policy period." (Boldface omitted.)

In its summary judgment motion, State Farm offered admissible evidence that in addition to Kulkarni's complaint, the Upasanis, through counsel, had provided State Farm with copies of deposition transcripts and written discovery responses from the underlying case, and State Farm had reviewed all of those documents; the Upasanis did not dispute this. Further, the Upasanis did not dispute that all of Kulkarni's allegations involved intentional, purposeful, and nonaccidental conduct by the Upasanis; specifically, Kulkarni alleged that his wife abducted their infant son and hid him from Kulkarni for almost 18 years, with the knowledge and help of the Upasanis, among others.

In opposition to the motion, the Upasanis offered evidence that, at trial in the underlying case, weak evidence or no evidence was offered to support the allegations in Kulkarni's complaint, and, ultimately, Kulkarni failed to prove any intentional, purposeful, or nonaccidental conduct by the Upasanis; indeed, the Upasanis established Kulkarni failed to prove they committed *any* acts relating to the abduction of Kulkarni's son.

An insurer's duty to defend is evaluated in light of the complaint's allegations, as well as extrinsic facts made known to the insurer at the time the claim is tendered. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295.) There is no duty to defend if there is no potential for coverage. (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276.)

In this case, State Farm established through admissible evidence that none of the causes of action asserted against the Upasanis by Kulkarni was within the scope of coverage because they did not allege any occurrence—that is, any accidental conduct by the Upasanis, resulting in bodily injury or property damage. An accident is "'"an unexpected, unforeseen, or undesigned happening or consequence from either a known or

4

unknown cause"'"" (*Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 559), or "something out of the usual course of events and which happens suddenly and unexpectedly and without design" (*State Farm Fire & Casualty Co. v. Drasin* (1984) 152 Cal.App.3d 864, 867). The actions alleged in the complaint or claimed in discovery were all nonaccidental, intentional, and purposeful. Kulkarni alleged the Upasanis and the other defendants in the underlying case were coconspirators in the abduction of Kulkarni's son. "The sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective." (*Schick v. Lerner* (1987) 193 Cal.App.3d 1321, 1328.)

Kulkarni's complaint also alleged the Upasanis had violated Civil Code section 49, subdivision (a), which prohibits "[t]he abduction or enticement of a child from a parent." In assessing a claim of violation of section 49, subdivision (a), "a material point of inquiry is the intent with which the defendant has acted. It must appear that the defendant has acted with improper motives." (*Horowitz v. Sacks* (1928) 89 Cal.App. 336, 340-341.)

Two of the causes of action alleged by Kulkarni against the Upasanis sounded in negligence—the second cause of action for negligence per se and the fourth cause of action for negligent infliction of emotional distress. But the factual allegations of those causes of action, and the evidence supporting them, showed the conduct that the Upasanis were alleged to have committed was intentional conduct. (Indeed, all of Kulkarni's causes of action relied on the same general factual allegations.) In addition to the claim the Upasanis had violated Civil Code section 49, subdivision (a), Kulkarni claimed the Upasanis had violated Penal Code section 278 and 18 United States Code section 1204, both of which require intentional and deliberate conduct on the part of the offender.[1]

---

[1] Penal Code section 278 provides: "Every person, not having a right to custody, who *maliciously* takes, entices away, keeps, withholds, or conceals any child *with the*

5

All the allegations in Kulkarni's complaint, as supplemented by the discovery responses, established the only claims against the Upasanis were for conspiracy to abduct Kulkarni's infant son. State Farm did not have a duty to provide coverage to the Upasanis because Kulkarni's damages did not arise from bodily injury caused by an accidental occurrence. Uniform case law supports our conclusion.

In *Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 536, the insured was sued for conspiring to engage in fraudulent business practices. The insurer denied coverage, and the insured sued the insurer. (*Id.* at p. 537.) The insurer's motion for summary judgment was granted, and the appellate court affirmed the judgment. (*Id.* at pp. 537-538.) "First, the insuring clause limited coverage to an accidental 'occurrence.' This was the triggering event. No duty to defend arose unless the third party claim involved an 'occurrence' neither expected nor intended from the standpoint of the insured. [Citations.] Since the [underlying] complaint was predicated on the allegation that [the insured] conspired to engage in fraudulent billing practices, none of the damages asserted arose from an accidental 'occurrence' within the meaning of the insuring clause. 'An intentional act is not an "accident" within the plain meaning of the word. [Citations.]' [Citation.] Any insured who participates in a conspiracy to defraud, as here alleged, cannot reasonably expect insurance coverage based upon the intentionally created 'occurrence.'" (*Id.* at p. 539.)

---

*intent to detain or conceal* that child from a lawful custodian shall be punished by imprisonment in a county jail not exceeding one year, a fine not exceeding one thousand dollars ($1,000), or both that fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years, a fine not exceeding ten thousand dollars ($10,000), or both that fine and imprisonment." (Italics added.)

Section 1204(a) of title 18 of the United States Code provides: "Whoever removes a child from the United States, or attempts to do so, or retains a child (who has been in the United States) outside the United States *with intent to obstruct the lawful exercise of parental rights* shall be fined under this title or imprisoned not more than 3 years, or both." (Italics added.)

In *Fibreboard Corp. v. Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 497-498, a manufacturer of products containing asbestos sought coverage under its general liability policy for damage and bodily injury claims brought by consumers. The appellate court affirmed summary judgment in the insurer's favor based, in part, on a determination that claims arising under a conspiracy theory could not be occurrences within the insuring agreement of the policy. "[The insurer] also correctly points out that in any event claims based on conspiracy theories are not covered by [the insurer]'s policies because they do not and cannot allege damage caused by an 'occurrence.' The [insurer] policies provided coverage for bodily injury or property damage 'caused by an occurrence.' 'Occurrence' is defined as '*an accident*, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' (Italics added.) [¶] A 'civil conspiracy' entails formation and operation of the conspiracy and acts done in furtherance of the common design. [Citation.] In other words, 'a person, or defendant, cannot *inadvertently become a member of a civil conspiracy*.' [Citation.] ""'. . . [T]here must be a preconceived plan and unity of design and purpose, *for the common design is of the essence of the conspiracy*.'"" [Citation.] Thus, there is a conscious, decisionmaking element that takes civil conspiracies out of the range of behavior encompassed within the meaning of an 'occurrence.' An insured who participates in a conspiracy, even if the agreed upon behavior or course of conduct is to act negligently, cannot expect coverage for 'an accident.' In its plain, ordinary sense, an accident is 'an unforeseen and unplanned event or circumstance.' [Citation.] As a matter of law, a civil conspiracy cannot occur by accident; therefore, the policies afford no coverage for these claims. [Citations.]" (*Id.* at pp. 510-511.)

The Upasanis contend the rulings on various motions in the trial court, as well as the jury's verdict, establish an implied finding that there was an "occurrence" for purposes of determining coverage under the State Farm policies. If an insurer fails to

7

defend its insured, coverage and liability issues determined in the underlying action will be binding on the insurer in a later coverage action. (*Hogan v. Midland National Ins. Co.*, *supra*, 3 Cal.3d at pp. 564-565.) The trial court's order overruling a codefendant's demurrer to Kulkarni's complaint did not trigger coverage. In overruling the demurrer, the trial court found the complaint contained sufficient facts to show the codefendant had aided and abetted the abduction of Kulkarni's son; Kulkarni could plead negligence in the alternative; and the demurrer had not shown the causes of action were uncertain. None of these rulings is a finding the Upasanis' conduct, as alleged by Kulkarni, was an accidental occurrence, nor could an implied finding as to that fact arise from the order on the demurrer.

Later in the underlying case, the trial court denied the Upasanis' motion for summary judgment against Kulkarni: "Because the statute of limitations applicable to [Civil Code section] 49[, subdivision ](a) did not begin to run until 2008 the action is timely. Defendant[s] have not met their burden under [Code of Civil Procedure section] 437c[, subdivision ](p)(2) to establish either that they did not engage in wrongdoing or that plaintiff lacks evidence to establish evidence of the statutory violation." The trial court did not make any express findings the Upasanis' conduct was accidental. To the extent the court's order contains any implied findings, they do not support the Upasanis' claims on appeal. The order analyzes all the claims as derivative of the claim that the Upasanis were part of a conspiracy to abduct Kulkarni's son and to hide him from Kulkarni, which continued through 2008. The court further concluded the cause of action for negligence per se could not be summarily adjudicated "because the cases cited by [the Upasanis] do not establish that a negligence claim would be barred." The trial court's conclusion the evidence of conspiracy was disputed and must be resolved by a jury was a recognition that, at a minimum, there was evidence from which it could be concluded that a conspiracy existed; as explained *ante*, because a conspiracy cannot be created and operated accidentally, an accidental occurrence within the terms of

8

the policies had not occurred.  Moreover, as explained *ante*, the causes of action sounding in negligence were based on allegations of intentional conduct.

The jury's special verdict does not make an express finding, nor result in an implied finding, that there was an accidental occurrence that would trigger coverage.  The jury found that neither Meera Upasani nor Mohan Upasani was aware that Kulkarni's wife planned to abduct her son.  Based on that finding, the conspiracy could not be proven, and the jury returned its verdict in favor of the Upasanis and against Kulkarni. This does not, however, create an implied finding that the Upasanis' conduct was accidental and, therefore, an occurrence under the terms of the State Farm policies.  This case differs from those cited and relied on by the Upasanis because Kulkarni never alleged or contended that, if the Upasanis did not conspire to violate Civil Code section 49, subdivision (a), they negligently or accidentally engaged in conduct that furthered the criminal conduct of Kulkarni's wife.  Therefore, the finding the Upasanis were not aware Kulkarni's wife planned to abduct her son does not result in an implied finding the Upasanis' conduct was negligent.  (Compare *Bonfils v. Pacific Auto Ins. Co.* (1958) 165 Cal.App.2d 152; *Ford v. Providence Washington Ins. Co.* (1957) 151 Cal.App.2d 431; *Lamb v. Belt Casualty Co.* (1935) 3 Cal.App.2d 624, 628.)  In the underlying case, given the allegations in Kulkarni's complaint, the discovery material provided to State Farm, and, ultimately, the testimony at trial, there were two different options as to the Upasanis' conduct—either they conspired to abduct Kulkarni's son, or they did not; accidental or negligent participation in the abduction of the child was not possible.

The Upasanis argue they could have been found liable for aiding and abetting, which would not have required intent, meaning there was an accidental occurrence.  The jury in this case was instructed with CACI No. 3610, as follows: "Plaintiff Kulkarni claims that he was harmed by Neelam Kulkarni's abduction of Soumitra and that defendants Mohan Upasani and Meera Upasani are responsible for the

harm because they aided and abetted Neelam Kulkarni in committing the abduction. If you find that Neelam Kulkarni abducted Soumitra causing harm to plaintiff Kulkarni, then you must determine whether defendants Mohan Upasani and Meera Upasani are also responsible for the harm. [¶] Mohan Upasani is responsible as an aider and abettor if plaintiff Avinash Kulkarni proves all of the following: [¶] One, that Mohan Upasani knew that an abduction was going to be committed by Neelam Kulkarni and, two, that Mohan Upasani gave substantial assistance or encouragement to Neelam Kulkarni, and, three, that Mohan Upasani's conduct was a substantial factor in causing harm to plaintiff Avinash Kulkarni. [¶] Meera Upasani is responsible as an aider and abettor if plaintiff Avinash Kulkarni proves all of the following: [¶] One, that Meera Upasani knew an abduction was going to be committed by Neelam Kulkarni against plaintiff Avinash Kulkarni; two, that Meera Upasani gave substantial assistance or encouragement to Neelam Kulkarni; and, three, that Meera Upasani's conduct was a substantial factor in causing harm to Avinash Kulkarni. Mere knowledge that an abduction was going to be committed and failure to prevent it do not constitute aiding and abetting."

The fact the instruction does not use the word "intent" is not determinative. "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted. In *Lomita Land & Water Co. v. Robinson* (1908) 154 Cal. 36 . . . , the California Supreme Court explained this requirement in the course of affirming a judgment against two defendants for aiding and abetting a fraudulent land sale scheme engineered by two others. The court stated, 'The words "aid and abet" as thus used have a well understood meaning, and may fairly be construed to imply an intentional participation *with knowledge of the object to be attained*.' [Citation.]" (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1145-1146.) A defendant who acts with actual knowledge of the intentional wrong to be committed and provides substantial assistance to the primary wrongdoer is not an accidental participant in the enterprise.

10

The Upasanis rely on *Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302 (*Delgado*). That case, however, supports affirmance. It is true, as the Upasanis contend, the *Delgado* court noted "that an injury-producing event is not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor." (*Id.* at pp. 311-312.) The Upasanis also contend that because the jury found they were unaware of the planned abduction, they had no intent to cause injury, meaning the occurrence was accidental. But because, as in *Delgado*, the injuries claimed by Kulkarni were not, as a matter of law, accidental, there was no potential of coverage under the policies. (*Delgado*, *supra*, at p. 312.) The Upasanis argue Kulkarni's damages occurred as a result of Kulkarni's wife's 18-year stay in India, which was, as to the Upasanis, an "act of fortuity," and therefore an accidental occurrence for which there is coverage under the policies. The Upasanis' alleged acts were the participation in a conspiracy to abduct a child. Kulkarni's wife's stay in India for 18 years continued the abduction and increased the claimed damages, but did not negate the intentional act that started the tort.

The Upasanis also contend that State Farm was collaterally estopped from refusing to defend them, based on *State Farm Fire & Casualty Co. v. Superior Court* (2008) 164 Cal.App.4th 317 (*Wright*). The doctrine of collateral estoppel is inapplicable here. "Collateral estoppel precludes a party from relitigating in a second proceeding the matters litigated and determined in a prior proceeding. The requirements for invoking collateral estoppel are the following: (1) the issue necessarily decided in the previous proceeding is identical to the one that is sought to be relitigated; (2) the previous proceeding terminated with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party to or in privity with a party in the previous proceeding." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201, fn. 1.) "The 'identical issue' requirement addresses whether 'identical factual

11

allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." (*Lucido v. Superior* Court (1990) 51 Cal.3d 335, 342.) Therefore, we consider whether the factual allegations in *Wright* and in the present case are identical.

In *Wright*, *supra*, 164 Cal.App.4th at pages 320-321, an insured under a State Farm homeowners insurance policy threw a person into a swimming pool with the intention of getting him wet; however, the other person landed on the pool's step and suffered physical injuries. The appellate court concluded the injuries were covered by the homeowners policy, despite the fact that the insured deliberately threw the person into the swimming pool. "[The insured] rashly threw [Joshua] Wright at the pool without expecting that Wright would land on the cement step. Stated otherwise, the act directly responsible for Wright's injury, throwing too softly so as to miss the water, was an *unforeseen or undesigned happening or consequence* and was thus fortuitous. [Citation.] The event here was an accident because *not* all of the acts, the manner in which they were done, and the objective accomplished transpired exactly as [the insured] intended. [Citations.]" (*Id.* at p. 329, original italics.) The facts in *Wright* are not analogous, much less identical, to those in the present case.

We find *Wright* to be of little precedential value in any event. In *State Farm General Ins. Co. v. Frake* (2011) 197 Cal.App.4th 568 (*Frake*), the Court of Appeal distinguished *Wright* on three separate grounds, with which we agree. First, *Wright* is factually distinguishable (*Frake*, *supra*, at p. 584), as noted *ante*. Second, the Supreme Court's later decision in *Delgado* calls into question certain aspects of the *Wright* holding: "*Delgado* repeatedly states that '[t]he term "accident" in the policy's coverage clause refers to the injury-producing acts of the insured . . . .' [Citation.] *Wright*, however, includes language suggesting that the court believed the term 'accident' may refer to the injury that resulted from an intentional act, rather than the injury-producing act itself. The *Delgado* decision also clarified that an intentional act is not

12

transformed into an accident merely because the insured was operating under some mistake of fact. This holding stands in contrast to the reasoning of *Wright*, which ruled that [the insured]'s mistake regarding the amount of 'force necessary to throw Wright far enough out into the pool' was sufficient to transform his behavior into an accident. [Citation.]" (*Frake*, *supra*, at p. 584.) Finally, as the *Frake* court noted, the holding in *Wright* was "contradictory to well-established California law. We are not aware of any California decision that has cited *Wright* approvingly or adopted its analysis. Indeed, the only published California case that has discussed *Wright* questioned its holding." (*Frake*, *supra*, at p. 585.)

Our opinion is not affected by the Upasanis' arguments regarding the definition of bodily injury in the State Farm policies. From March 20, 1991 through March 20, 1993, the Upasanis were covered by one State Farm policy, in which the term "bodily injury" was defined as follows: "'[B]odily injury' means bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom. Bodily injury does not include any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any insured to any other person. It also does not include the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person." (Boldface omitted.) The definition of bodily injury in the Upasanis' policies from March 20, 1993, to November 2012 (when the motion for summary judgment was filed) was as follows: "'[B]odily injury' means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom. [¶] Bodily injury does not include: [¶] a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any insured to any other person; [¶] b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person; or [¶] c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical

13

injury to some person." (Boldface omitted.) (During this time period, State Farm issued two separate policies to the Upasanis, a condominium unitowners policy from March 20, 1993 to March 20, 1997, and a homeowners policy from March 18, 1997 through the date the summary judgment motion was filed. The definition of bodily injury was identical in both policies.)

Although Kulkarni alleged he had suffered "pain and suffering," there were no allegations and there was no evidence that he had suffered bodily harm, physical injury, sickness, or disease as a result of the Upasanis' alleged actions. Kulkarni's injuries were emotional, not physical. "The cases overwhelmingly hold that the phrase 'bodily injury, sickness or disease' is plain and unambiguous and that coverage under the bodily injury clause is limited to physical injury to the body and does not include nonphysical, emotional or mental harm." (*Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 854.)

The Upasanis nevertheless argue that Kulkarni's alleged emotional distress was a bodily injury under the terms of the various policies because it arose from a noneconomic loss. The Upasanis cite the California Supreme Court's opinion in *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 26, for the proposition that an occurrence triggering coverage under a commercial general liability policy can be "an event based on a noneconomic act causing either emotional distress or bodily injury." The implication of this conclusion is set forth clearly in a leading insurance treatise: "Arguably, if the *insured's conduct is otherwise covered* by a [commercial general liability] policy, claims for emotional distress alone (unaccompanied by physical injury) should be covered." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2013) ¶ 7:122.3, p. 7A-51 (rev. # 1, 2009), citing *Waller.*) And, as discussed in detail *ante*, the Upasanis' conduct was not otherwise covered by the State Farm policies, so Kulkarni's claims for emotional distress damages are not covered. "Any damages flowing from noncovered losses that may lead to emotional distress

14

cannot be used to expand coverage where none was intended or bargained for by the parties." (*Waller v. Truck Ins. Exchange, Inc.*, *supra*, at p. 16.)

The Upasanis also point to the change in the language of the policies' definitions of bodily injury, and argue that by adding a specific exclusion for emotional distress to the later policies, emotional distress damages were covered by the earlier policies. This argument fails for two reasons. First, long before State Farm modified its policies to make a specific reference to emotional distress, well-established California law made clear that bodily injury did not include emotional distress damages. (See *Chatton v. National Union Fire Ins. Co.*, *supra*, 10 Cal.App.4th at p. 854.) Second, State Farm's denial of coverage letter does not, as the Upasanis contend, concede that Kulkarni's emotional distress damages under the older policy language would qualify as bodily injury. That letter states, in relevant part: "Under the Condominium Unitowners policy . . . , it is questionable whether plaintiff sustained a bodily injury as the term is defined in the policy. The policy defines bodily injury as bodily harm, sickness or disease. [¶] There is no indication that plaintiff is seeking the recovery of damages which potentially qualify as bodily injury as the term is defined in both the Condominium Unitowners policy . . . and the Homeowners policy . . . . Both policies define bodily injury as physical injury, sickness, or disease to a person. The policies go on to state that bodily injury does not include emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." Simply put, to say something is "questionable" in a denial of coverage letter is not the same as conceding the issue.

15

DISPOSITION

The judgment is affirmed.  Respondents to recover costs on appeal.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.

16

Filed 6/26/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MEERA UPASANI et al.,<br><br>    Plaintiffs and Appellants,<br><br>      v.<br><br>STATE FARM GENERAL INSURANCE COMPANY et al.,<br><br>    Defendants and Respondents. | G048399<br><br>(Super. Ct. No. 30-2011-00531846)<br><br>ORDER GRANTING REQUEST FOR PUBLICATION |

Respondent State Farm General Insurance Company has requested that our opinion, filed June 6, 2014, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.


FYBEL, J.

WE CONCUR:


ARONSON, ACTING P. J.


THOMPSON, J.