Filed 5/28/15  Hetman v. Cal. Capital Ins. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WAYNE T. HETMAN,<br><br>     Cross-Complainant and Appellant,<br><br>          v.<br><br>CALIFORNIA CAPITAL INSURANCE COMPANY,<br><br>     Cross-Defendant and Respondent. | G048894<br><br>(Super. Ct. No. 30-2009-00325635)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sheila Fell, Judge.  Reversed.

Wayne T. Hetman, in pro. per., for Cross-Complainant and Appellant.

Wade & Lowe and Victor R. Anderson; Haight Brown & Bonesteel, Victor R. Anderson and Vangi M. Johnson for Cross-Defendant and Respondent.

\*          \*          \*

Wayne T. Hetman appeals from the trial court's entry of judgment in favor of California Capital Insurance Company (CCIC) after the trial court granted CCIC's summary judgment motion on Hetman's cross-complaint against CCIC for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief. Hetman's cross-complaint arose from CCIC's defense of Hetman in an underlying suit that Hetman's neighbors filed against him. After the neighbors prevailed, CCIC filed a declaratory relief action against Hetman alleging CCIC was only responsible to indemnify Hetman for a portion of the judgment under his homeowner's policy. Hetman filed his cross-complaint contending CCIC was responsible for the entire judgment because it had undertaken an express written duty to attempt settlement of the entire lawsuit with his neighbors, but made no reasonable effort to investigate and settle the suit, and instead steered the case to trial out of animosity toward the neighbors' lawyer, a former CCIC attorney.

Hetman contends triable issues of fact remain on issues in his cross-complaint, including (1) whether CCIC met its contractual obligation to pay all the expenses Hetman incurred in defending himself against the underlying suit, (2) whether CCIC breached its obligation to pay for an appeal bond in the underlying suit, and (3) whether CCIC's failure to make any effort to investigate or settle the underlying suit breached an express written obligation it undertook to *attempt* to settle the *entire* underlying litigation, not just covered claims. As we explain, triable issues of fact remain on these issues, precluding summary judgment, and we therefore reverse the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Hetman and his Foothill Ranch neighbors, the Harms, became embroiled in an acrimonious dispute that generated five earlier appeals between those parties. The five earlier cases, in chronological order, are: *Harm v. Hetman* (June 25, 2009, G039955) 2009 WL 18168882 [nonpub. opn.] [upholding $402,000 judgment in favor of the Harms

2

on their causes of action against Hetman for slander of title, negligence, nuisance, and intentional infliction of emotional distress]; *Harm v. Hetman* (June 25, 2009, G040454) 2009 WL 1816943 [nonpub. opn.] [reversing denial of the Harms' attorney fee request under community CC&Rs]; *Harm v. Hetman* (March 16, 2011, G043206) 2011 WL 901979 [nopub. opn.] [upholding attorney fee order]; *Harm v. Hetman* (Feb. 3, 2012, G044633) 2012 WL 345027 [nonpub. opn.] [upholding trial court's sua sponte reconsideration of summary adjudication in favor of Hetman on an alleged postverdict settlement resolving the underlying litigation and disposing of the Harms' collection efforts]; *Harm v. Hetman* (May 4, 2012, G044700) 2012 WL 1560352 [nonpub. opn.] [concerning the Harms' collection efforts].

As pertinent here, when the Harms filed their underlying lawsuit against Hetman for slander of title, nuisance, negligence, and intentional infliction of emotional distress, Hetman tendered the claim to CCIC under his homeowner's insurance policy. The policy covered injury or damage caused by the insured in "accident[al]" "occurrences," excluding "bodily injury or property damage which is intended by an insured." CCIC agreed in a letter it sent to Hetman on May 8, 2006 (May 8th letter), to provide Hetman "a defense for the entire Complaint," including the slander of title and intentional infliction of emotional distress causes of action that alleged Hetman engaged in intentional tortious conduct. CCIC explained in the letter that if the matter proceeded to trial and Hetman were found liable, CCIC would not pay for damages arising from the intentional conduct.

However, just as it undertook to defend Hetman in the entire lawsuit, CCIC also stated in the May 8th letter that it would "make all reasonable attempts to settle the entire suit . . . ." CCIC specified similarly that if its reasonable efforts were unsuccessful and "we are unable to do so [i.e., settle the suit]," it would not pay for noncovered damages. Specifically, the May 8th letter provided: "California Capital Insurance Company will make all reasonable efforts to settle the entire suit; however, if we are

3

unable to do so, as explained in the following paragraphs, we will not provide coverage for damages arising from the allegations except those arising from Negligence."

The May 8th letter explained the damages exclusion in the event of reasonable settlement efforts failed, as follows: "[T]here is no obligation to provide coverage for the allegation of intentional infliction of emotional distress because this allegation and the remaining damages arise from behaviors that are expected and intended and [therefore] are specifically excluded under the policy." Similarly, the letter explained that if CCIC's reasonable settlement efforts were not fruitful, "there is no coverage for punitive damages prayed for by Plaintiffs because these arise from intentional and not accidental behaviors and as such do not meet the policy definition of an 'occurrence.'" The letter explained generally that "[d]amages that are expected and intended are also excluded under the policy."

CCIC's May 8th letter also offered to pay for independent counsel to represent Hetman's interests at trial, and Hetman retained Andrew Weiss. CCIC did not hire separate counsel for itself at trial, but as indicated in its May 8th letter, it retained settlement authority for the entire case.

According to Hetman, contrary to its express undertaking in the May 8th letter to make reasonable efforts to settle the entire lawsuit, CCIC reneged on that promise by not only ignoring the case, but actively thwarting settlement. According to Hetman, CCIC failed to investigate the case, ignored all settlement offers by the Harms, ignored Weiss's warning Hetman faced substantial liability at trial, thwarted mediation, and made a "lowball" offer of $5,000 designed to insult the Harms and force the case to trial instead of settling.

Specifically, Hetman asserted in his separate statement of facts opposing summary judgment that the Harms twice made overtures to settle the case, but CCIC ignored them and made *no* effort to settle the case, contrary to its written promise. First, in October 2006, Weiss forwarded to CCIC the Harms' initial written settlement demand

4

of $285,000 to settle all their claims.  CCIC made no counteroffer or other response to the settlement offer, ignoring it.  Next, in December 2006, the Harms served on Hetman an offer to compromise (Code Civ. Proc., § 998) on all claims in the lawsuit for $299,900, just under Hetman's $300,000 policy limit.  Hetman forwarded the § 998 offer to CCIC, but CCIC again ignored the overture,  making no responsive offer or other gesture towards settling the case.

To the contrary, according to Hetman, CCIC actively thwarted mediation despite CCIC's promise in the May 8th letter to undertake reasonable settlement efforts. Instead of a good faith effort to settle the case, CCIC sent Weiss a letter preempting mediation, advising Weiss "it was unwilling to participate in mediation unless, among other things, Mr. Hetman was willing to contribute monies to settle the dispute."  (Italics omitted.)  Specifically, the letter stated:  "There must be a willingness on his part to contribute toward these uncovered damages.  If these are acceptable, you can set the matter for Mediation.  If not, I do not believe it is appropriate."  The letter was authored by Glenn Foote, CCIC's litigation supervisor assigned to Hetman's claim.

According to Hetman, the letter contradicted CCIC's May 8th letter promising reasonable efforts to settle the case.  The May 8th letter did not set a contribution amount as a precondition before CCIC would engage in settlement discussions.  In any event, Hetman's declaration opposing summary judgment asserted he had no funds "to contribute to a settlement, and therefore, mediation was never scheduled" given the precondition Foote imposed.

Next, Hetman claimed CCIC revealed its true antipathy to settlement and its intent to renege on its May 8th letter promising reasonable settlement efforts when it made a "nominal" offer of just $5,000 at the mandatory settlement conference (MSC). The trial court alerted Foote it did not believe the case would settle for that amount. Foote did not discuss with Weiss his intent to make the $5,000 offer, nor did he discuss with Weiss an appropriate offer or seek Weiss's recommendation concerning a settlement

5

amount. Weiss did not recommend or approve CCIC's $5,000 offer. According to Hetman, "[a]fter CCIC made its $5,000 offer, the Harms left the MSC and did not even respond to the $5,000 offer." At his deposition, Foote acknowledged he was not surprised that the $5,000 offer "basically ended the MSC negotiations."

According to Hetman, he was a victim of CCIC's animosity toward the Harms' attorney, Richard Jones, a former CCIC attorney. In his declaration opposing summary judgment, Hetman noted Foote told him at the mandatory settlement conference that he (Foote) was "pissed" at Jones for "bringing this type of lawsuit and expecting CCIC to pay the Harms off." Foote ignored Hetman's concerns about trial and his desire to settle, assuring him "not to worry," that the case was a "slam dunk" win, that the Harms' legal claims against him were "absurd," that they could not obtain a significant award at trial and, even if they did, CCIC would cover any judgment against him.

As proof CCIC never intended to honor its promise in its May 8th letter to attempt to settle the litigation, Hetman asserted in his opposition to summary judgment that CCIC never bothered to investigate the case. Weiss advised CCIC that Hetman faced "substantial liability" based on the Harms' allegations that Hetman: "(a) put snail poison on their property, against their request; (b) put trash on their yard; (c) sprayed Soraya Harm and her daughter Megan with water from [a] hose; (d) tried to run down Soraya Harm and her son James with his car; (e) blocked the Harms' exit from the parking lot of a grocery store; and (f) followed the Harms when they left their home."

Indeed, at trial the jury awarded the Harms $402,000 in damages, consisting of $327,000 in compensatory damages and $75,000 in punitive damages. The jury's special verdict form specified the $327,000 compensatory damage award consisted of $96,000 for slander of title, $129,000 for intentional infliction of emotional distress, $27,000 for negligence, and $75,000 for nuisance damages in preventing the Harms' quiet enjoyment of their property. Following the jury's verdict, entry of judgment, and Hetman's unsuccessful appeal, CCIC paid the Harms $149,000 to release their judgment

6

claim of $102,000 on the negligence and nuisance causes of action, which CCIC deemed to be covered claims under Hetman's homeowner's policy.

In opposing CCIC's summary judgment motion in the present case, Hetman argued that CCIC's failure to investigate the underlying case before trial supported the inference CCIC did not intend to make reasonable efforts to settle the case as it promised in its May 8th letter. Hetman based his claim that CCIC failed to investigate the case on Foote's admission at the MSC that his file on the case was "completely empty of substantive activity from Mr. Weiss'[s] office." In other words, CCIC had not bothered to obtain any information from Weiss about the case before offering a paltry $5,000, and therefore CCIC breached its undertaking in the May 8th letter to make a reasonable attempt to settle the litigation.

According to Hetman, CCIC continued to ignore the case and its promise to attempt to settle the matter. While Weiss forwarded a disk to Foote after the MSC with all correspondence, discovery, and pleadings in the Harm action, Foote could not recall whether he ever obtained or reviewed a pretrial report from Weiss. Nor could Foote recall whether he obtained or reviewed a pretrial report from outside counsel CCIC retained to evaluate the Harm lawsuit. Foote admitted in his deposition that his lack of information about the case was "crippling" and prevented him from "evaluating the case" for liability or damages if it proceeded to trial. Foote refused Hetman's telephone request a month before trial to settle the case, but Foote later admitted concern he had not obtained information or heard from Weiss in the last few months before trial. CCIC also chose not to send anyone to observe the trial, and ignored Hetman's postverdict written plea to settle the case. According to Hetman, between CCIC's animosity towards the Harms' attorney and CCIC's total failure to investigate the case, it never intended to make reasonable efforts to settle the case as promised in its May 8th letter.

Hetman also opposed summary judgment on grounds that he presented evidence CCIC failed to pay all his legal and administrative expenses in the underlying

7

trial, contrary to its obligation under his homeowner's policy and its promise in the May 8th letter to provide him a complete defense. He similarly opposed summary judgment on grounds that while CCIC paid his attorney fees to appeal the underlying judgment, CCIC breached its obligation to provide a complete defense through the appellate stage by failing to post an appeal bond as Hetman requested, causing him to incur substantial attorney fees to defend against the Harms' collection efforts while the appeal was pending.

The trial court granted summary judgment in favor of CCIC, concluding Hetman's declaratory judgment cause of action failed because CCIC "fulfilled the duties and obligations at issue in Hetman's claim." The trial court did not consider whether CCIC made an express promise in its May 8th letter to attempt to settle the entire litigation, but instead focused on the original terms of the insurance policy. The court explained CCIC was entitled to judgment as a matter of law on Hetman's breach of contract claim as follows: "The policy issued by California Capital did not provide coverage for damages caused by the insured's intentional conduct. California Capital provided Hetman with a detailed coverage letter explaining that only the negligence cause of action was covered. Further, the insurer is not responsible for punitive damages awarded against its insured. The insurance contract was not breached."

Similarly, the trial court found no triable issue of material fact on Hetman's cause of action for breach of the covenant of good faith and fair dealing. The court did not consider whether CCIC promised in its May 8th letter to attempt to settle the entire lawsuit. Instead, the court simply concluded: "California Capital was not required to *successfully* settle the case. California Capital was not unreasonable when it rejected the § 998 offer of $299,999 or when it offered the Harms $5,000." (Italics added.) The court relied on the fact "*Cumis* counsel acknowledged that he [made] no objection to the $5,000 offer." The court also concluded as a matter of law that "[t]he facts do not support an obligation of California Capital to investigate." Finally, the court concluded

8

that because "California Capital fully satisfied the judgment for covered claims, it had no obligation to post a bond to protect Hetman against collection for non-covered claims." The court did not address Hetman's claim that CCIC failed to reimburse him for expenses he incurred in defending the underlying lawsuit.

II

DISCUSSION

Hetman contends the trial court erred in granting CCIC's summary judgment motion. "We review an order granting summary judgment de novo. [Citations.] A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citations.]" (*Upsani v. State Farm General Ins. Co.* (2014) 227 Cal.App.4th 509, 513 (*Upsani*).)

"'"The purpose of a summary judgment proceeding is to permit a party to show that *material* factual claims arising from the pleadings need not be tried because they are not in dispute." [Citations.]' [Citations.]" (*Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 136 (*Ahn*), original italics.) A defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit. (*Ibid.*; *Upsani*, *supra*, 227 Cal.App.4th at p. 513.) The defendant can meet that burden by either showing the plaintiff cannot establish one or more elements of his or her cause of action or there is a complete defense to the claim. (Code Civ. Proc., § 437c, subd. (p)(2).) To meet this burden, the defendant must present evidence sufficient to show he or she is entitled to judgment as a matter of law. (*Upsani*, at p. 513; *Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 847-848.) Once the defendant meets that burden, the burden shifts to the plaintiff to present evidence establishing a triable issue exists on one or more material facts. (*Ahn*, at p. 136; Code Civ. Proc., § 437c, subd. (p)(2).) Both the trial court and reviewing court are governed by the same standard, "liberally constru[ing] the evidence in support of the party opposing summary judgment and

9

resolv[ing] all doubts about the evidence in that party's favor." (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 196.)

A.      *Indemnification of Trial Expenses*

Hetman contends the trial court erred in granting CCIC's summary judgment motion because the court did not consider his claim that CCIC failed to reimburse him for expenses he incurred in defending the underlying lawsuit. We agree. CCIC did not dispute it was responsible for the costs and expenses entailed in providing Hetman a defense against the underlying lawsuit. Hetman asserted in his declaration opposing summary judgment that he "forwarded receipts regarding certain costs and expenses associated with the trial for which he was seeking reimbursement" to CCIC, and CCIC failed to pay them. Below, CCIC responded in a curious fashion, claiming simply and without explanation that "the alleged fact is not relevant to any issue in the lawsuit."

Because CCIC did not dispute its responsibility for such expenses, it failed its burden as the moving party to establish it was entitled to judgment as a matter of law. (*Ahn*, *supra*, 223 Cal.App.4th at p. 136.) On appeal, CCIC claims Hetman provided no evidence to support his expense claims, but Hetman had no obligation to do so because CCIC did not meet its initial burden. In any event, Hetman attached to his declaration receipts totaling $438. While the sum is nominal, CCIC's failure to dispute its obligation to pay the expenses precluded summary judgment. Because CCIC moved for summary adjudication, we address Hetman's other challenges on appeal.

B.      *Failure to Post Appeal Bond*

Hetman argues the trial court erred in concluding as a matter of law that CCIC was not required to post an appeal bond because it eventually paid the sums the jury awarded the Harms for the negligence and nuisance claims covered by Hetman's homeowner's policy. The trial court apparently reasoned that because CCIC paid the Harms for the covered claims, the costs Hetman incurred in defending against their

10

collection efforts during the pendency of the appeal could not be attributed to attempts to collect on the negligence and nuisance special verdict awards. But the evidence suggests CCIC paid the Harms in partial satisfaction of the judgment months *after* the appeal concluded, and therefore there is no basis to conclude the Harms' collection efforts *during* the appeal were directed solely toward the amounts the jury awarded on the intentional torts excluded from coverage under Hetman's homeowner's policy.

CCIC did not dispute it was required to pay for Hetman's defense on appeal, and indeed asserted it paid Hetman's appellate expenses in full, including attorney fees on appeal, which Hetman disputed. Nor did CCIC suggest Hetman failed to appeal the negligence and nuisance verdicts covered by his policy or that an appeal bond was useless because his appeal was meritless or frivolous. Notably, CCIC did not argue or establish with points and authorities that its duty to defend Hetman through the course of the lawsuit, including on appeal, did *not* include posting an appeal bond. Rather, CCIC simply asserted its partial payment of the judgment satisfied any obligation it may have had. But as noted above CCIC made that payment well after the appeal was final, too late to prevent the Harms' collection efforts during the appeal.

Now on appeal, CCIC relies on the fact Weiss did not request an appeal bond on Hetman's behalf. But CCIC overlooks Hetman's separate statement opposing summary judgment in which he noted that after the verdict Hetman personally "wrote a letter to CCIC, specifically requesting CCIC to take action to post a bond to stay enforcement of the judgment pending the outcome of [his] appeal." As before, CCIC responded in a curious and conclusory fashion, claiming simply and without explanation that "the alleged fact is not relevant to any issue in the lawsuit." Consequently, because CCIC only suggested incorrectly that it had effectively substituted partial payment of the judgment for an appeal bond and did not establish or attempt to establish its duty to defend Hetman on appeal did not include posting an appeal bond, it failed its burden as

11

the moving party to establish it was entitled to judgment as a matter of law. (*Ahn*, *supra*, 223 Cal.App.4th at p. 136.)

## C.     *No Attempt to Settle*

Hetman contends the trial court erred in granting summary judgment because it did not address his core claim underlying his cross-complaint that CCIC failed to attempt to settle the Harms' claims against him, as it had promised in its May 8th letter. We agree. The trial court concluded in its minute order that CCIC "was not required to *successfully* settle the case." (Italics added.) But as Hetman observes, "that is not really the issue. The real issue is whether CCIC was required to make *a reasonable effort to settle the case* as it promised in its May 8, 2006 letter." (Original italics.)

As noted at the outset, a defendant moving for summary judgment bears the initial burden to show the plaintiff's action has no merit, and may do so by showing the plaintiff cannot establish an element in each of his or her causes of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Ahn*, *supra*, 223 Cal.App.4th at p. 136.) Like the trial court, CCIC focused on the coverage exclusion for intentional harms in Hetman's homeowner's policy as the basis for concluding Hetman could not prevail on his breach of contract, breach of the implied covenant of good faith and fair dealing, or declaratory relief action because he could not establish CCIC ever *agreed* to cover such harms. Consequently, absent the requisite element of an agreement as the basis for Hetman's breach of contract claim and attendant good faith and fair dealing and declaratory relief claims, CCIC did not have a duty to settle the Harms' claims that were based on intentional torts. But this argument misses the mark because it focuses exclusively on the parties' agreement in the original insurance policy.

On appeal, CCIC similarly misfocuses on Foote's alleged oral promise at the mandatory settlement conference that CCIC would cover *all* damages if Hetman lost at trial. CCIC explains that Hetman's homeowner's insurance policy included a

12

provision barring oral modifications, and therefore Foote's alleged statement was nonbinding. But CCIC overlooks Hetman's core claim that the May 8th letter was an express written modification promising to "make all reasonable attempts to settle *the entire* suit." (Italics added.)

Below, CCIC argued Hetman took this language out of context and could not reasonably have understood it to mean CCIC would be liable for *all* damages, including claims not covered in the original insurance contract, if CCIC failed to make reasonable efforts to settle the suit. In moving for summary judgment, CCIC bolded language in the May 8th letter, as follows: "California Capital Insurance Company will make all reasonable attempts to settle the entire suit; **however, if we are unable to do so, as explained in the following paragraphs, we will not provide coverage for damages arising from the allegations except those arising from Negligence**." But putting this language in boldface did not establish as CCIC claimed that it "specifically told Plaintiff that *regardless of efforts* [or a complete lack thereof] to settle the entire lawsuit, it would *not* pay non-covered damages." (Italics added.)

To the contrary, CCIC did not negate the reasonable conclusion that implicit in CCIC's promise to make "all reasonable efforts to settle the entire suit" was an acknowledgement that CCIC would not invoke the "no-coverage except for Negligence" language *unless* it had made reasonable settlement efforts. In other words, "if we are unable to do so [i.e., reach a settlement based on reasonable efforts]," then the no-coverage caveat applies. A promise or requirement to engage in reasonable settlement efforts as a precondition for exercising policy limits or terms is not uncommon in the insurance context. (See *Hamilton v. Maryland Casualty Co.* (2002) 27 Cal.4th 718, 725 ["An unreasonable refusal to settle may subject the insurer to liability for the entire amount of the judgment rendered against the insured, including any portion in excess of the policy limits"].)

13

This is particularly true here where a reasonable jury could find in Foote's alleged statements about full coverage and his confidence the Harms' suit was meritless corroboration of CCIC's promise to make reasonable efforts to settle the entire lawsuit and if it did not, it would cover damages for all the Harms' claims. (See *Lachtman v. Regents of University of California* (2007) 158 Cal.App.4th 187, 196 [triable fact precluding summary judgment exists when "'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion'"].) Put another way, a reasonable jury could find the language in the letter meant what it said, namely that CCIC promised to undertake reasonable efforts to settle the entire lawsuit, and if it did not make those efforts, it would be liable for failing to do so.

CCIC simply did not meet its summary judgment burden to negate the possibility a reasonable jury could conclude in light of the May 8th letter that CCIC undertook to make reasonable settlement efforts and breached that promise in a number of ways. Nonexhaustive examples include CCIC's alleged total failure to investigate the case, which could give a jury ample grounds to conclude CCIC had no reasonable basis to reject the Harms' multiple settlement offers within policy limits or to require settlement funds from Hetman before it would engage in mediation. Simply put, absent investigation, CCIC had no way of knowing what the case was worth or whether the Harms' demands reflected potential liability traceable to covered categories or whether mediation solely on covered claims might result in resolving the entire case. (See, e.g., *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 908 [implied covenant of good faith and fair dealing "entails a duty to pay a reasonable amount in settlement 'based on a fair appraisal of potential exposure and the strength of each case'"]; *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15 ["an insurer potentially can be liable for unreasonably coercing an insured to contribute to a settlement fund"].) A reasonable jury could

14

conclude that CCIC was "flying blind" on the case, to Hetman's risk and detriment, despite its promise to undertake reasonable settlement efforts.

CCIC also argued Hetman failed to establish the Harms would accept anything less in a settlement than the $400,000 they garnered at trial, and therefore CCIC's failure to act on its alleged promise to engage in reasonable efforts to settle did not harm Hetman. But it was CCIC's obligation as the party moving for summary judgment to establish no reasonable jury could conclude the Harms would accept a reasonable settlement offer, if CCIC had made one. CCIC ended up paying the Harms $149,000 in satisfaction of the covered claims, which is more than half of the Harms' $285,000 initial settlement overture and almost half of their section 998 offer. A reasonable trier of fact could conclude the Harms likely would have accepted a reasonable counteroffer to avoid the expense and acrimony of trial.

Finally, CCIC cited case law for the proposition that absent reasonably clear liability, an insurer generally has no duty under the terms of an ordinary insurance policy to make a settlement offer. (*Du v. Allstate Ins. Co.* (9th Cir. 2012) 681 F.3d 1118, 1125, opn. amended and resolved on other grounds (9th Cir.) 697 F.3d 753, 758-759.) But as Hetman correctly points out, an insurer may not simply bury its head in the sand concerning its insured's potential liability. (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818-821 [breach of covenant of good faith and fair dealing to fail to investigate claim against insured].) More to the point, CCIC presented no authority below or on appeal that precludes an insurer from undertaking an express written obligation to make reasonable settlement efforts. Because the trial court failed to consider the May 8th letter at the core of Hetman's cross-complaint and because CCIC failed its burden to establish it was entitled to judgment as a matter of law, the summary judgment must be reversed.

15

III

DISPOSITION

The judgment is reversed.  Hetman is entitled to his costs on appeal.


                                        ARONSON, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.